State vs. Foster et al.

## No. 1211.

THE STATE OF LOUISIANA VS. WILLIAM FOSTER AND ROBERT DAVIS.

In a murder case, a verdict of "guilty of capital punishment" cannot serve as a foundation
for a sentence of death. The verdict, taken literally, convicts the accused of no crime
known to the law or charged in the indictment; and if we resort to conjecture as to its
true intent, the arguments are equally balanced as to whether it meant "guilty *with*
capital punishment," or "guilty *without* capital punishment."

APPEAL from the Twenty-first District Court, Parish of Iberia.
Fontelieu, J.

___

C. H. Mouton and John N. Ogden, District Attorneys, for the State,
Appellee.

Breaux & Renodet for Defendant and Appellant.

___

The opinion of the Court was delivered by

FENNER, J. The defendants appeal from a sentence of death for the
crime of murder.

A brief extract from the minutes of the court, as presented in the
record, will disclose the only point which we find it necessary to dis-
cuss on this appeal:

"The jury appeared in court, and on being polled each juror an-
swered to his name, as follows, etc.; whereupon James Camorse, fore-
man, handed to his Honor, the judge, the verdict in this case. The
court ordered the clerk to read the verdict. It read as follows: 'Both
guilty of capital punishment, (Signed) Jas. Camorse, foreman.' The
court again ordered the jury polled, and as each juror was called his
Honor, the judge, asked him, 'What is your verdict?' Each juror an-
swered, 'Both guilty of capital punishment.' The court then, on mo-
tion of the district attorney, ordered the verdict of 'Both guilty of cap-
ital punishment' recorded and remanded the prisoners to jail, and the
jury in this case was discharged."

An imagination stimulated by familiarity with the freaks of ignorant
juries might have conceived the possible existence of a single man
capable of inditing such a verdict; but the phenomenon of twelve men
successively adopting and repeating the senseless formula, confounds
all precedent and would surpass belief if it were not asseverated from
the pages of a solemn judicial transcript. Not the slightest effort seems
to have been made to call the attention of the jury to the absurdity of
their verdict, or to afford opportunity for correction or explanation.

The sentence of death passed upon the prisoners in pursuance of such a verdict cannot, of course, be sustained. However heinous be the guilt of defendants, without the verdict of a jury finding them guilty of some capital·crime, the judge had no more right to touch their.lives· than if they had been as innocent as saints. We are equally without right to affirm his sentence, unléss such verdict exists and appears on the face of the record. Obviously, it is wanting here. The verdict, taken in a literal sense, convicts the accused of no offense known to the law or charged in the indictment. If we resort to conjecture as to the intention of the jury, the arguments are about equally balanced as to whether it intended to find "guilty *with* capital punishment," or "guilty without capital punishment." In support of the latter hypothesis the record discloses that, on their *voir dire*, two of the jurors expressed their aversion to capital punishment.

In such matters we must not depend upon uncertain conjectures; and we are bound to reverse the judgment.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury be annulled and set aside, the judgment and sentence voided and reversed, and the case remanded to the lower court to be there proceeded with according to law.