No. 12,907.

51 163
110 14

THE STATE OF LOUISIANA VS. JAMES C. HARPER.

(1.) The general rule that the incompetency of the juror arising from pre-adjudication of the case or other cause, is not available to set aside the verdict, is subject to the qualification that the juror's incompetency is discovered after the trial, and that he was interrogated as to his competency of the *voir dire* examination and answered falsely. Thompson & Meriam on Juries, S. 302; 43rd Ann. 365; 45th Ann. p. 1181.

(2.) The court again affirms its jurisdiction to review the rulings of the trial judge, on application for new trial, when the testimony on which such rulings are based, is made part of the bill. 6th Robinson, p. 529; 32nd Ann. p. 844; 41st Ann. 143.

ON APPEAL from the Twenty-First Judicial District Court for the Parish of St. John the Baptist. *Rost, J.*

*M. J. Cunningham,* Attorney General and *Robert J. Perkins,* District Attorney, (*H. N. Gautier,* of counsel), for the Plaintiff and Appellee.

*James D. Seguin, Gaudet & Edrington* and *R. N. Sims* for Defendant and Appellant.

Argued and submitted December 10, 1898.
Opinion handed down December 19, 1898.
Rehearing refused January 23, 1899.

The opinion of the court was delivered by

MILLER, J. The accused, indicted for murder, prosecutes this appeal from the sentence of death.

The questions submitted to us arise on the bill of exceptions reserved to the refusal of the new trial, applied for on behalf of the ac-

cused. The prominent ground assigned for the new trial is: that one of the jurors was incompetent to serve, because he had formed and avowed his opinion of the guilt of the accused; had besides expressed his purpose to get on the jury to convict the accused, and that notwithstanding this opinion of the defendant's guilt, the juror, on the *voir dire* examination, had answered in the negative to the questions, whether he had formed or expressed any opinion as to the guilt of the prisoner. The rule for the new trial particularizes the occasions of the expressions of the juror by giving the dates, places and persons to whom the expressions were addressed, or who heard the juror. On the trial of the rule, the testimony was taken of the parties named in the bill as well as others offered by the State as well as on behalf of the accused. The bill of exceptions to the refusal of the new trial makes part of the bill the rule for the new trial sworn to by the accused and all the testimony produced in support of the rule.

The contention of the State that the incompetency of one of the jurors who tried the accused, cannot be urged after the verdict to set it aside, is well founded, with this qualification; that the disqualification of the juror was not known to the accused, when the juror was presented, and could not then have been ascertained by due diligence. The diligence exacted is, that the accused should have examined the juror on his *voir dire*, the time and mode for testing the juror's competency, and that the juror should have answered falsely as to his competency. The qualification is quite as well settled as the rule itself invoked by the State. Thompson & Meriam on Juries, S. 302; State vs. Garig 43rd Ann. 365; State vs. Nash, 45th Ann. 974; State vs. Button, 50th Ann. not yet reported. Were it otherwise, there would be no relief for the accused deceived by the false answers of the juror on his *voir dire* examination, and the accused would suffer the penalty for crime of which he had never been convicted by a jury constituted in accordance with the constitution and laws. The further contention of the State, that when the accused seeks to set aside the verdict for the incompetency of the juror developed after the trial, the burden is on the accused to show the juror was examined on his *voir dire*, and gave false answers. It is distinctly stated in the rule made part of the bill, and signed by the judge without qualification, that the juror was questioned whether he had formed or expressed any opinion as to the guilt of the accused, answered in the negative, avowing his freedom.

from bias or prejudice, and his competency to try the accused according to the testimony and the law. We must accept as conclusive, the signature of the trial judge to the bill as certifying to this court this *voir dire* examination and the answers of the juror to his competency, incidents of a trial, occurring under the eye of the trial judge, and explicitly stated in the rule, part of the bill signed by the trial judge.

Although a rule for a new trial is the appropriate remedy, when the conviction has been procured from an illegal jury, *i. e.* not constituted as required by the Constitution, securing to the accused the "historical jury" of twelve impartial men, and although the accused has brought himself within the rule of diligence that he must have examined the juror whose competency is now sought to be impeached, on his *voir dire,* and that the juror answered he was competent, still, it is contended, this court cannot review the testimony the accused claims exists, the incompetency of the juror and the falsity of his answers on the *voir dire* examination that he had formed no opinion of the guilt of the accused. If this contention is sustained there is then no relief to be had in this court, when the accused claims the jury that convicted him was composed in violation of his Constitutional right to an impartial jury. According to the argument addressed to us the decision of the trial judge is final. The general rule is invoked of the weight due to the decision of the lower court on application for new trials in criminal cases, and in the brief of the State we have a copious citation of authority from the other States as well as our own, in support of that asserted to be the discretion of the trial judge, not subject to revision in this court. Our courts, however, have carefully discriminated decisions of the trial judge on applications for new trial refused by the trial judge with no basis exhibited to this court on which the trial judge acted, from cases like the present, when the facts on which the trial judge refused the new trial are brought up by the bill of exceptions. The question arising on the facts thus spread before this court*in the record, cannot be dismissed by us as one resting in the discretion of the trial judge, but is one of law, or, at least, as it is sometimes expressed, of law blended with fact, so as to make it a legal question within the jurisdiction of this court to review, under the grant to this court of appellate jurisdiction in criminal cases on questions of law. Constitutions of 1879, Art. 81; and Art. 85 of 1898. Here the accused insists he has been deprived of his Constitutional rights of a jury trial without which there can be no conviction of the

offence for which he was indicted. The facts on which this depriva-
tion of right is predicated are certified to us by the trial judge. We
are not at liberty to decline the determination of the question thus
arising. It is a question of law on the state of facts exhibited by the
record. At an early period the jurisdiction of this court was affirmed
and is now to be deemed settled to review the rulings of the lower
court in criminal cases on applications for new trial when the bill of
exceptions exhibited the facts on which the ruling was based. State
vs. Charlot, 8th Rob. 529; State vs. Nelson, 32nd Ann. 844; State vs.
Trivas, 32nd Ann. 1086; State vs. Seiley, 41st Ann. 143; State vs.
Nash, 45th Ann. 1148. It is our conclusion, therefore, that the bill of
exceptions submits to us, whether, under the facts brought up by the
bill, the juror whose competency is called in question was qualified to
try the accused, and whether the disqualification of the juror, if it ex-
isted when he was called to take his·place on the panel, was not
masked by the answers he then gave that he had not preadjudicated
the case. Under the mandate of the Constitution, we have, therefore,
examined the testimony before us deeply impressd with the import-
ance of maintaining convictions for crime against applications of the
character of that before us, often expedients without basis and availed
of as the last resort to escape punishment, and, on the other hand, we
have been equally sensible of the protection to which the accused is
entitled. If the testimony adduced in support of his appeal is con-
vincing there has been no trial or conviction required by the laws and
the Constitution to support the sentence that consigns him to the
scaffold.

One of the witnesses on the rule for the new trial testifies in the
most emphatic terms, that on the day the case was tried before the
jury was empanelled, the juror stated, in effect, he did not think he
would be accepted, for the counsel for the accused knew the opinion
then avowed by the juror, "I am for conviction." To this testimony
is opposed the denial of the juror called as a witness; and there is also
the testimony of two others that they did not hear any statement
though present in the skiff crossing the river, when the statement is
imputed to the juror. There is testimony that on another occasion,
about a week before the trial, the juror stated he thought both the
accused and the other indicted with him, guilty, that witnesses bad
for both would be produced; in the course of the cross-examination,
extremely searching, the juror was questioned with persistency

whether the juror had not qualified his expression by if the proof was at hand claimed to exist, but the witness, with equal persistency, adhered to his statement that the juror had not accompanied the expression of his opinion of guilt with any qualification; again there is the denial of the juror and the testimony of another who was present, that the juror's expression was the opinion qualified by "if the matter was as the public had it," but on the cross examination this witness stated he could not recollect the exact words of the juror, though he, the witness, could give, in his words, the expression of the juror, and in the further cross examination, the witness stated, in effect, he remembered part only what was said on the occasion. We have, therefore, the positive testimony of a conversation in which there is attributed to the juror, the strongest expression of opinion of the guilt of the accused. The contrast of the persuasive force of this positive testimony is marked, we think, as opposed to that of the State's witness, who stating he cannot give the juror's exact words, adds further that he does not remember all that was said. Then, too, along with the juror's denial of the expression of opinion, we have his answers on cross examination that impress us as detracting from that denial. Even the qualification of opinion the State's witness attributes to the juror he himself does not recollect, and responding to the question: "Did you not say soemthing about the guilt of Harper and Grover?" the juror stated: "Not that I remember; don't think I did." The testimony, in reference to the juror's expression on this occasion, has left on our minds the natural impression produced by positive testimony of what was said, when weighed with that of a witness questioned in reference to his own statements, the subject of the positive testimony, answers to the general effect he does not remember. Then there is the testimony of the juror's expression on another occasion, of opinion of the guilt of the accused, and the testifying witness imputes to the juror a disqualification more serious than that of preadjudication. In the clearest language the witness gives the statement from the juror he would try to serve on the jury, if accepted would send both to the pen, and on the same line we have the repetition testified to by the witness that the juror stated, if asked whether he had formed an opinion, he would say "no." From another witness present we have the statement the juror qualified his statement by, "if the case is as the public has it, both were guilty and should be hanged," but the other words attributed to the juror find no contradic-

tion unless it has escaped our attention. The juror's testimony disclaiming with emphasis, that he desired to serve, that he did not express any such desire; does not remember between whom the conversation arose, that he did not advance the question, and someone else was speaking about the case, does not strike us as marked by that positiveness of the defence witness, that on that occasion the juror said, if accepted "he would send both to the pen," a peculiarity of expression which, if not used, it seems to us would have elicited more than the denial of the expression of opinion as we find it in the record. Finally, we have the testimony, that on still another occasion, on the suggestion his name was on the jury list, the juror stated he did not believe he would serve, his opinion was formed, was known to the counsel for the accused, that if asked if he had formed an opinion, would say no, and if he served would hang both. The testimony as to what the juror said in this last conversation is in unambiguous, positive terms, neither varied or weakened, in our opinion, by the cross examination. There is some negative testimony to the contrary produced by the State, but not of a character to impress us against the positive testimony of the defence's witness. Nor can we fail to appreciate that the testimony for the accused derives greater force from the testimony of the juror himself to the effect he remembers no such conversation and he repeats "not a word of it." The effect that the law and reason give to testimony so strongly contrasted is too obvious to need comment. The text books announce the reasons, and all authority concurs in giving persuasive control to the affirmative testimony. Starkie on Evidence, S. p. 828.

It is true the juror testifies he had formed no opinion, could try the case impartially on the law and testimony, and the State addresses to us the argument that opinions not fixed of the accuseds guilt, do not disqualify the juror. We cannot suppose that if the testimony of the condition of the juror's mind had been put before the trial judge that the juror would have gone on the panel. However, we cannot determine his fitness as a juror by his answers given after verdict when his competency has been questioned to pass sentence on the accused, and in solving that issue gives greater weight to such answers, weighed with the testimony of his declarations before the trial, testified to by four witnesses to as many occasions, to the general effect his mind was made up for conviction, and, if accepted, he would hang both.

We cannot resist the force of the testimony of four different wit-

nesses to expressions of the juror on separate occasions of his conviction of the guilt of the accused, two of these witnesses testifying to other expressions of the juror denoting the condition of his mind unfitting him for service on the jury. Least of all, can we perceive that the positive testimony of the defence's witnesses is weakened by such denials from the juror as we find in the record. Starkie S. p. 828.

With the most patient examination of the testimony, it is our conclusion that the juror was not qualified to serve on the jury that convicted the accused, and for this cause the sentence must be set aside and a new trial awarded.

It is, therefore, ordered, adjudged and decreed that the sentence of the lower court be reversd and set aside and a new trial granted the accused, that to that end the cause be remanded and that he be held in custody to stand said new trial according to law on the indictment preferred against him.

NICHOLLS, C. J., absent.