Second. To the First National Bank, the amount of its judgment.

Third. To M. S. Standifer, the amount of his judgment.

Fourth. To the Rice-Stix Dry Goods Company, the amount of its judgment.

And it is further ordered that said judgments, as thus amended, be affirmed, and that the appellees pay cost of appeal.

---

(54 South. 480.)

No. 18,581.

STATE v. BESANCON et al.

(Feb. 13, 1911. Rehearing Denied March 13, 1911.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 518*)—CONFESSIONS—ADMISSIBILITY—CAUTION.

A free and voluntary confession of the accused is admissible in evidence, although he was not warned that his statements might be used against him.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1157–1162; Dec. Dig. § 518.*]

2. CRIMINAL LAW (§ 517*) — CONFESSIONS—ADMISSIBILITY.

Where a confession is made in the presence of the district attorney or other officer, there is no legal objection to taking down the statements of the accused in the form of question and answer.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1146–1156; Dec. Dig. § 517.*]

Appeal from Criminal District Court, Parish of Orleans; F. D. Chretien, Judge.

Eugene Besancon and Francois Rodin were found guilty of murder, and appeal. Affirmed.

E. A. O'Sullivan, for appellants. St. Clair Adams, Dist. Atty., and Warren Doyle, Asst. Dist. Atty., for the State.

LAND, J. The accused were indicted for the murder of one Franz Hermann Reidel. Both were found guilty as charged, and were sentenced to be hanged. The accused have appealed, and rely for reversal on several bills of exception.

Reidel was murdered, and his dead body, inclosed in a sack, was found in the waters of the Old Basin. His person had been rifled of his pocketbook, watch, and chain. Suspicion pointed its finger at Besancon as the murderer, and his room as the place of the homicide. Besancon was arrested, and made a statement to the district attorney implicating Rodin as chief actor in the bloody tragedy. Thereupon Rodin was arrested, and, in turn, made a statement to the same official incriminating Besancon as the leader in the work of murder and robbery.

These two statements were reduced to writing in the form of questions and answers, which were signed by the accused, respectively.

On the trial of the cause these statements or confessions were offered in evidence on behalf of the prosecution, and counsel for the accused made objection, as follows, to wit:

"I object to the introduction of the confession on the ground that it is not a free and voluntary confession, but merely a series of interrogatives propounded by the district attorney."

The prosecution had introduced evidence to show that the confession was the free and voluntary act of the accused, who adduced no evidence whatever to the contrary.

After a careful perusal of the evidence, we concur in the finding of the trial judge that:

"The testimony in the case will satisfy any one that the confessions of both Besancon and Rodin were voluntary and freely given."

The accused had the opportunity to prove prior duress unknown to the officer who received the confessions, if any such duress had been exercised. The motives for the confessions are obvious. That of Besancon was to save his own neck by holding out Rodin as the actual perpetrator of the murder, and himself as an unwilling assistant. That of Rodin was to exculpate himself from the accusation made against him by Besancon.

As stated by the trial judge, the objection was to the confession as a whole. On the reading of the confessions, an objection was made to a certain question and answer, but this objection was subsequently withdrawn.

In this court counsel for the accused objects that the district attorney had no authority to examine the accused. Of course, the district attorney has no power to hold preliminary examinations in criminal cases. But any official or citizen may receive a voluntary confession of crime, and it is the peculiar duty of the district attorney to investigate the truth of all criminal charges or accusations. In the instant case, in order to perpetuate the statements of the accused, they were taken down in the form of questions and answers by an official stenographer. The notes were then transcribed, and read to the accused for the purpose of verification and correction. No fairer mode of perpetuating oral statements has ever been devised.

The further objection, not made in the court below, is urged that the accused were not cautioned that their statements might be used against them.

It was not necessary for the state to show that the accused were so warned. State v. Howard, 127 La. 435, 53 South. 677; State v. Bunger, 14 La. Ann. 465; State v. Foster, 36 La. Ann. 857.

Finding no reversible error in the trial of the case, it is ordered that the verdict and sentences below be affirmed.