(59 South. 202.)

No. 19,448.

STATE v. CANTON et al.

(June 13, 1912. Rehearing Denied June 28, 1912.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 519*)—EVIDENCE—CONFESSIONS—VOLUNTARY CHARACTER.

Confessions used in the trial of criminal cases must be made voluntarily, without hope or fear offered by another person.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1163–1174; Dec. Dig. § 519.*]

2. CRIMINAL LAW (§ 518*)—EVIDENCE—CONFESSIONS—VOLUNTARY CHARACTER.

It is unnecessary for the state to show that an accused has been warned that his confession may be used against him. State v. Howard, 127 La. 435, 53 South. 677; State v. Besancon, 128 La. 85, 54 South. 480.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1157–1162; Dec. Dig. § 518.*]

3. NAMES (§ 16*)—IDEM SONANS.

The names of "Matranga" and "Maranga" are idem sonans.

[Ed. Note.—For other cases, see Names, Cent. Dig. §§ 4, 12–14; Dec. Dig. § 16.*]

4. CRIMINAL LAW (§ 918*)—NEW TRIAL—GROUNDS—IMPANELING JURY.

A new trial will not be granted, where it is not shown that a juror answered falsely, or willfully concealed the correct spelling of his name, and that the defendant has suffered injury from the acts of said juror.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2163, 2192, 2195, 2219–2224; Dec. Dig. § 918.*]

Appeal from Criminal District Court, Parish of Orleans; Frank D. Chretien, Judge.

Rene Canton and another were accused of murder, and, from a verdict finding defendant Rene Canton guilty, he appeals. Affirmed.

H. N. Gautier, for appellant. St. Clair Adams, Dist. Atty., and Warren Doyle, Asst. Dist. Atty., for the State.

SOMMERVILLE, J. Defendant Rene Canton appeals from a verdict finding him guilty of murder, and sentence condemning him to death. Lucian Canton was acquitted.

There are four bills of exceptions in the record; but two of them were abandoned in open court.

[1] The first bill of exceptions to be considered is taken to the ruling of the trial judge in admitting in evidence the written confession of Rene Canton made to the district attorney. It is claimed on defendant's behalf that the confession was not voluntarily made by him, and that he had not been warned in advance that said confession might be used against him.

The state introduced in evidence the testimony of four reputable witnesses to prove that the confession of defendant was voluntarily made, and signed by him. On cross-examination, these witnesses testified to the negative facts that the district attorney did not browbeat or threaten defendant, or make any promises to him, or advise him; and that the former was not guilty of any misconduct towards the latter. Defendant did not call any witnesses to contradict the testimony given on this

point, and he did not take the witness stand himself for that purpose.

We have carefully read the confession, in the form of questions and answers, and also the testimony of the witnesses introduced on behalf of the state, which went to show the voluntariness of the confession, and we concur with the district judge in his finding to the effect that:

"The state introduced, as part of its case, the confession of the defendant. Before admitting the confession, witnesses were called to the stand, who swore to its being free and voluntary. Their statements were not contradicted by any witnesses, and the witnesses to the confession were men of character.
· "I therefore admitted them (the confessions of both defendants), and they were read to the jury. No one could read the confession itself, and the intrinsic evidence of its voluntary character, without being thoroughly convinced of its voluntariness."

[2] It was objected that the district attorney had no authority to examine the accused. Of course, the district attorney could not compel the accused to be a witness against himself at any time whatever, whether during the course of a regular trial, or preliminary to such trial, as was held by us in the Besancon Case, 128 La. 85, 54 South. 480. We say there:

"Any official or citizen may receive a voluntary confession of crime, and it is the peculiar duty of the district attorney to investigate the truth of all criminal charges or accusations. In the instant case, in order to perpetuate the statements of the accused, they were taken down in the form of questions and answers by the official stenographer. The notes were then transcribed and read to the accused for the purposes of verification and correction. No fairer mode of perpetuating oral statements has ever been devised.
"The further objection, not made in the court below, is urged that the accused were not cautioned that their statements might be used against them. It was not necessary for the state to show that the accused were so warned. State v. Howard, 127 La. 435, 53 South. 677."

What we said in the Besancon Case is entirely applicable to the case at bar.

"The rule of law demands that the confession shall have been made voluntarily, without the appliances of hope or fear by any other person." Greenleaf on Evidence, § 219.

"And whether it was so made or not is to be determined upon consideration of the age, situation, and character of the person and the circumstances under which it was made. It must not be obtained by the exertion of any improper influence." State v. Auguste, 50 La. Ann. 491, 23 South. 613.

And, in the case cited, we held that the statements made by the defendant, Auguste, were made under peculiar influences, which might have had their effect upon the voluntariness of the confession, and were therefore improperly admitted in evidence. We refused to look into the measure of the force or influence used, simply deciding that where it appears that any influence whatever has been used that the confession was not voluntary, and could not go to the jury.

We are referred to the case of Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568. In that case it appears that the accused, Bram, had been stripped of his clothing by an official, and was then told by him that he (the accused) had been seen while in the act of committing the murder of which he was charged. The prisoner denied having committed the murder, but he was betrayed into making a negative admission, by saying that the person who said that he had seen him (Bram) commit the murder was in such a position that he could not have seen him at that time. The court held the said alleged negative confession to fall within the rule excluding statements made under inducements improperly operating to influence the mind of an accused person. The court there held that:

"The impression is irresistibly produced that it (the confession) must necessarily have been the result of either hope or fear operating on the mind."

In fact, the so-called confession was not a confession. It was a positive denial of guilt by the accused. But it had been used by the prosecution as a confession on the

trial, and the court continued to give it that effect. The accused there did not intend to make a confession, did not know that he had made one, and the court held that it had not been voluntarily made. No such conditions exist in connection with this case.

The court in the Bram Case laid down the general doctrine to this effect:

"In this court the general rule that confessions must be free and voluntary, that is, not produced by inducement engendering either hope or fear, is settled by the authorities referred to at the outset. * * * In this court, also, it has been settled that the mere fact that the confession is made to a police officer, while the accused was under arrest, in or out of prison, or was drawn out by his questions, does not necessarily render a confession involuntary, but, as one of the circumstances, such imprisonment or interrogation may be taken into account in determining whether or not the statements of the prisoner were voluntary."

The ruling of the trial court is in conformity with the law applied in the Bram and Auguste Cases, and it is in line with the decision in State v. Besancon, 128 La. 85, 54 South. 480.

Complaint is specially urged against the action of the district attorney in having the police officers bring to his office all persons charged with serious crimes, instead of having them taken to the nearest police jail. Defendant brings his complaint under Act No. 11 of 1906, and Act No. 109 of 1908. The former act is one "granting to judges and recorders jurisdiction over all persons arrested and charged with any crime, misdemeanor or offense, and defining their authority to grant bail in such cases." There is a provision made that the police or other arresting officers shall conduct the accused to the nearest jail or police precinct station; but the act nowhere takes from the district attorney the right to investigate all criminal charges or accusations. The law makes it his duty to do so, and it is also his duty, as it is that of any other citizen, to accept any confession voluntarily made by an accused person. The other act relied upon, No. 109 of 1908, makes it a misdemeanor for a police or other arresting officer to frighten by threats, or torture, or by other means, to secure confessions from accused persons. Neither of these acts was violated by the action of the district attorney in having the accused brought to his office, and to there receive a voluntary confession made by him.

The other bill of exceptions is taken to the ruling of the trial judge refusing to grant a new trial.

[3, 4] To the bill of exceptions which was taken to the overruling of the motion, the learned trial judge has appended the following per curiam:

"The motion for a new trial, in this case, which was overruled, was predicated chiefly upon the allegation that one John C. Matranga served upon the jury, whereas the person actually called was one John C. Maranga. The facts are these:

"By clerical error the letter 't' in the name of John C. Matranga was omitted, and when he was called to the witness stand and sworn he was referred to as John C. Maranga. The clerical error was not noted during the course of the trial, due, very likely, to the fact that 'Matranga' and 'Maranga' are idem sonans.

"Be that as it may, the record shows that John C. Matranga was the true name of the juror; that he was properly qualified by the jury commissioners under this name; that his name was properly placed in the jury wheel; that he was the identical person who was qualified by the jury commissioners for jury duty in this case.

"The jury commissioner testified that he knew Mr. Matranga, and that the person he qualified as Matranga was the same person who actually did serve as a juror in this case. The entire evidence of Mr. Matranga on his voir dire is in the record, and it shows that counsel for defendant had every opportunity to ascertain the facts relating to the juror, and that he did examine him at length.

"There is no charge whatever, and there can be none, that Mr. Matranga intentionally concealed his true name. The record shows that he is a reputable business man, and that the whole incident was simply and purely a clerical error, which resulted in the omission of the letter 't' from the name of the juror. The defendant did not suffer any substantial injury, or, in fact, have his rights prejudiced in any manner by this clerical omission of the letter 't.' "

The trial judge has succinctly stated the facts with reference to this matter as they appear in the testimony of W. S. Patrick, minute clerk, J. A. Taylor, court stenographer, John C. Matranga, juror, J. A. Grassin, jury commissioner, and Christopher Cassidy, deputy clerk.

The testimony given by Mr. Matranga on his voir dire is in the record, and it shows that he was thoroughly examined by both the state and the defendant, but that he was not examined with reference to the clerical omission of the letter "t" from his name. This evidence shows that the defendant and his counsel had every opportunity to correct the clerical error.

It is not charged in the motion for a new trial that Mr. Matranga answered falsely, or willfully concealed the correct spelling of his name.

In order to show injury, defendant alleges that he was served with a jury list containing the names of the jurors who were selected to try him, and that thereafter, on the day of the trial, he instructed his counsel not to accept as jurors, if tendered, two men, one named Matranga and one named Prat, both absolutely unknown to defendant.

In the absence of fraud or false testimony by the juror upon his qualifications, the defendant must exercise due diligence to ascertain his qualifications when he is examined on his voir dire. Here no fraud or false swearing on the part of Mr. Matranga has been charged. The rule applicable to this state of facts is set forth in the case of State v. Button, 50 La. Ann. 1072, 23 South. 868, 69 Am. St. Rep. 470, where we say:

"When the juror is tendered, the opportunity is afforded the accused to examine the juror as to his competency. To enable the accused to inform himself with respect to the jury by whom he is to be tried, the law requires the jury list to be served on the accused two entire days before the day of trial. R. S. § 992. With the right to challenge any juror not qualified to serve and full opportunity afforded to ascer-

tain if there is a cause for any such challenge, it deserves serious consideration whether the accused, after he has accepted a juror and taken the chance of acquittal, and after an adverse verdict, can claim that the verdict shall be set aside, because one of the jurors was a minor. * * *

"Our own jurisprudence has not favored applications to set aside verdicts on grounds like that urged here. Our courts have uniformly held that it was too late, after verdict, to urge the disqualification of one of the jurors; that the full opportunity was afforded to make such objections; that it should be made when the juror is presented and cannot be insisted upon after the trial. In some of the cases, the circumstances that the disqualification of the juror was not known when he was accepted by the accused was considered and held to imply a want of diligence, fatal to the objection. State v. Nolan, 13 La. Ann. 276; State v. Bower, 26 La. Ann. 384; State v. Sopher, 35 La. Ann. 975; State v. Garig, 43 La. Ann. 370, 8 South. 934. The decision of our predecessors held that, where the juror was examined on his voir dire and gave false answers to questions touching his qualifications, in such case the objection to the juror's competency was a sufficient ground for a new trial. State v. Nash & Barnett, 45 La. Ann. 1143, 13 South. 732, 734. The decision proceeds on the ground that the accused could not be deprived of his right to a jury composed as the law directs, by the fraud accomplished by the false answers of the juror. That decision resting on the ground peculiar to that case does not infringe on the line of our decisions on this subject. It is our conclusion the objection to the juror's competency came too late, and hence the rule for a new trial was properly overruled." State v. Whitesides, 49 La. Ann. 352, 21 South. 540; State v. Harper, 51 La. Ann. 163, 24 South. 796; State v. Keziah, 110 La. 11, 34 South. 107.

It is alleged in the motion for a new trial that defendant, before going to trial, instructed his counsel not to accept a man named Matranga as a juror, and that when Matranga was called as Maranga defendant and his counsel did not know him to be Matranga, and that defendant has suffered injury thereby.

Defendant made an affidavit to the truthfulness of the allegations contained in the motion for a new trial, and his counsel annexed an affidavit, or deposition, thereto. The reading of the latter was objected to on the trial of the motion for a new trial,

and the objection was sustained. A bill of exceptions was reserved to the ruling, but that bill has been abandoned in this court.

Defendant did not take the witness stand on the trial of the motion for a new trial, but his counsel did. The latter did not testify in support of the allegation as to instructions from defendant to him to challenge the juror Matranga, or that he would have challenged Matranga, or that defendant was injured by Matranga serving as a juror. The motion for a new trial was properly overruled.

There is no error in the judgment appealed from, and it is affirmed.