DAWKINS, J.
Defendant was convicted
of the crime of bigamy, and prosecutes this appeal. The record contains 13 bills of exception, numbered from 1 to 10, inclusive,' and A, B, and C.
Bill of Exceptions No. 1.
[1 ] This bill was reserved to the overruling of a motion for a continuance on the ground of the absence of certain witnesses residing hi the state of Texas. The motion, which was properly verified, set up that the witnesses would testify to certain facts, material to the defense, as follows:
(1) E. L. Kowalski, of Brownsville, Tex.: That he was the deputy clerk of Cameron county, Tex., who issued the license to marry “Adolph Bishop and Miss Rosalie Asbury” November 27, 1912, and that the defendant was not the person to whom said license was issued (the license in question being the one-which was used in proof of the first marriage of the accused); that he knew the reputation of the chief prosecuting witness, Rosalie As-bury, alleged first wife of defendant, and that she was intimately connected with a gambler and alleged smuggler op the Mexican border by the name of Bill Lawson, hailing from Tampico, Mexico; further, that the said Rosalie Asbury was commonly known (during the time she is claimed to have been married to defendant) as Mrs. Gonzales, and was reputed in that section of the border to have married Gonzales; further, that said Kowal-ski was present when one Rev. J. M. Perry (the minister who, it was claimed, had performed the marriage between defendant and his said first wile) made an affidavit that defendant was not the man whom he had united in marriage in the ceremony celebrated between Adolph Bishop and Rosalie Asbury, the said minister being present for the trial, and, according to defendant’s information, intend- ■ ing to repudiate his said affidavit and to swear that accused was the same person *753 whom lie had so married at the time referred to. Attached to the motion was an affidavit by Kowalski (copy) in which he had sworn to the best of his knowledge and belief defendant was not the man to whom the license had been issued, giving certain reasons therefor; also copy of the alleged affidavit by the said Rev. Perry, and a telegram from Kowal-ski at Puebla, Mexico, dated April 3, 1919, stating that he had been detained there on account of important business, would not be able to appear at Lake Charles on April 7th, the day fixed for the trial, but could and would appear on Api*il 25th.
(2) Judge W. S. Holman, of Bay City, Tex., would testify that the reputation of the said Rosalie Asbury for truth and veracity was bad, and that an injunction had been issued against her at Bay City, Tex., to prevent her from slandering another woman, but that the said Rosalie Asbury had left there before service of the writ could be made, ‘Defendant swore that he had just learned of the existence of said witness, and had not had time to communicate with and procure his attendance.
(3) That an unnamed justice of the peace at Harlengin, Tex., would testify that said Rosalie Asbury had, subsequent to the alleged marriage with defendant, made an affidavit before him charging a Mexican with the theft of certain jewelry under the name of Mrs. Antonio Gonzales, or Rosalie Asbury; that defendant had only recently come into possession of said information, and believed that he could have the said officer present for the trial if the same were postponed for a reasonable time.
The motion made all other formal and essential averments, and was therefore in proper and legal form.
The motion was overruled by the lower court for the following reasons, quoted from the per curiam:
“This exception was taken to the judgment bf the court overruling a motion for a continuance of the case. The motion for continuance was opposed by the state for the reason that the defendant was arraigned on February loth, which was fully seven weeks before the date of fixing for trial, to wit, April 7th, and there was therefore ample time given defendant to arrange for the attendance of his witnesses in the state of Texas, and to procure their attendance. Furthermore, these witnesses being outside the jurisdiction of the court, no assurances could bo given that the witnesses could ever be produced at this trial.”
[2] It is true that all of the witnesses, both for the state and defense, on the issue of the first marriage, which was denied by the defendant, as well as records, etc., had to be imported from the state of Texas, where the first marriage was claimed to have taken place. However, a very wide discretion is allowed trial courts in the matter of continuances, and, unless there be an apparent abuse of it, this court will not interfere. Kowalski was undoubtedly an important witness for defendant, if he would swear to the facts claimed for him. However, his affidavit, attached to the motion, which appears to have been made on the occasion of a visit by the defendant to him about January 20, 1919, does not positively deny the identity of defendant with the person who applied for the license, but recites:
“To the best of my knowledge! and belief, I have no recollection of ever having seen Adolf Bischoff, of Do Quincy, La., before the 20th day of January, 1919. The said Mr. Adolf Bischoff has a certain foreign accent in his speech very noticeable, which I am confident of recalling, if I had ever prior to said January 20, 1919, met him; and, as it is necessary to interrogate an applicant for a marriage license, I have every reason to believe and do believe that he is not the party to whom I issued said marriage license above referred to.”
His testimony was also important in connection with the affidavit first made by Rev. Perry, the minister reputed to have performed the marriage ceremony under the license issued by Kowalski, and in which Perry also stated:
*755 “I have no recollection oí ever having heretofore met or performed the marriage ceremony above referred to Mr. Adolf Bischoff and the said Rosalie Asbury”
—which, was subsequently recalled and repudiated by Perry, and which was made in the presence of Kowalski. Perry was present at the trial and did repudiate the affidavit, and swore that defendant was the same person whom he had married to the said Rosalie As-bury; but counsel for defendant cross-examined him fully, as it must be presumed for the purposes of this motion that he would do, in the presence of the jury, who could form their own opinion as to the weight of the witness’ testimony. Perry had notified Ko-walski, and through the latter the attorney for defendant, of his intention to recall and repudiate the said affidavit, and of his purpose to attend the trial of a civil suit for divorce between defendant and the second wife, more than a month prior to the trial of this case below — that is, on March 6th, 1919 — and they had every opportunity to know of this fact, and to be prepared to combat Perry’s testimony when the case came up. Kowalski was a lawyer, and in some relation, not fully disclosed in the record, had participated in the preparation of the defense by gathering testimony in the state of Texas. Both he and the present counsel for defendant knew and should have realized the importance of his appearance at the trial. Under such circumstances, we can hardly conceive that he was not promptly notified of the fixing of the case on February 15th for April 7th. In fact, Perry’s affidavit, to which Kowalski was a witness, was taken four days after the fixing of the case, or on February 19th, and we must assume that Kowalski was so advised. If he was, and knowingly went to Mexico, instead of arranging to come to the trial, then we have no assurance that he would not find some other excuse for not appearing on another date. If local counsel did not notify him until a few days before the trial, as would appear from the record, then there was not that diligence on his part and that of defendant, who was himself on bail and could have notified Kowalski, which the law requires, and defendant has no one to blame for this witness’s absence but himself and his counsel.
As to Judge W. S. Holman, the only relevant fact to which it was alleged he would testify was that the reputation of the said Rosalie Asbury for truth and veracity was bad; but it was admitted in the motion that this was discovered a few days before the trial, and that said Holman had expressed a willingness to attend defendant’s trial, and no reason is given for the failure to use the mails or the telephone or telegraph facilities for procuring his presence. There appears to have been a lack of proper diligence.
We are forced to reach the same conclusion in the matter of the justice of the peace at I-Iarlingen, Tex. Besides, his testimony would have been offered to impeach the witness Rosalie Asbury on a remotely relevant fact as to having made an affidavit in a name other than that of Mrs. Adolph Bishop or Mrs. Adolf Bischoff.
The showing made is not sufficient to convince us that the lower court abused the sound legal discretion allowed it by law in refusing the motion for a continuance.
Bill of Exceptions No. 2.
[3, 4] Bill of Exceptions No. 2 was reserved to the overruling by the court of defendant’s objection to the admission in evidence of a certified copy of the marriage records of the clerk’s office of Cameron county, Tex., showing the marriage of Adolph Bishop and Miss Rosalie Asbury—
“on the ground and for the reason that same was inadmissible, irrelevant, and immaterial, and showed a variance in the allegation named in the indictment, the same not being idem sonans, and that no allegation appearing in the indictment that defendant had married in any other name than his own name of Adolf Bischoff,' *757 and objected to parol evidence contradicting said documentary evidence, and to the further offering in evidence a certificate purporting to have been signed by a minister, J. M. Perry, uniting in marriage Mr. Adolph Bishop and Mrs. Rosalie Asbury. ’•s * * ”
In its per curiam the lower court states tlrat Mrs. Rosalie Asbury Bischoff testified that defendant was the identical person to whom she had been married at Brownsville, Tex., and as charged in the bill of information, this fact being denied by defendant, but who admitted that he had lived with the said witness in a state of concubinage; that said witness further testified she induced defendant to agree to a change from the spelling of his name in the German form of Adolf Bischoff to its English equivalent, Adolph Bishop, and that he afterwards changed bach to Adolf Bischoff.
The certified copy of the marriage records appear to disclose that the said record was properly kept, and the same, having been certified according to the acts of Congress, was properly admitted in evidence. Wharton’s Criminal Evidence, vol. 2 (10th Ed.) p. 1108 et seq. There was also no error in admitting in evidence the said record of a marriage between Adolph Bishop and Rosalie Asbury to prove the allegation of a marriage of Adolf Bischoff and Roaslie Asubury, the proof disclosing that defendant was the identical person who had been married under the license of which the offering was a copy. The names were idem sonans. State v. Pointdexter, 117 La. 380, 41 South. 688; State v. Canton, 131 La. 255, 59 South. 202; Wharton’s Criminal Evidence, vol. 1, p. 289 et seq.
Bill of Exceptions No. 3.
[5] This bill notes the objection by defendant to the admission in evidence of documents marked “SI” to “S12,” inclusive, on the ground that they were irrelevant, immaterial, and not properly identified; also that document marked “S7” constituted a variance in the indictment and proof. •
We fail to find “SI” in the record, but the others consist of envelopes, letters, shipping tags, the flyleaf of a book, etc., which bore the names of “A. Bischoff,” “Mrs. A. Bischoff,” “Mrs. E. A. Bischoff,” and which we are informed by the per curiam were identified as being in the handwriting of the defendant. The state having previously offered in evidence the marriage license evidencing the marriage of defendant to Mrs. Marguerite Black Bischoff (the second wife), and. which it is alleged constituted the bigamy, said license showing the admittedly genuine signature of. the defendant, the documents were offered and admitted for the purpose of proving by comparison to the jury the identity of defendant with the person who wrote them, as a circumstance to show that he had been previously lawfully married to the witness Roaslie Asbury Bischoff.
We find no error in the ruling.
Bill of Exceptions No. 4.
[6] Defendant offered in evidence an affidavit by E. L. Kowalski (principal witness for whose absence continuance had been sought), “likewise true copies of the records of Cameron county, Tex., showing minister’s return thereon, for the purpose of impeaching testimony of minister, * * *” and also evidence to explain absence of Kowalski. The judge sustained an objection by the state to these offerings on the ground that the same were ex parte, but states that he permitted counsel to testify as to what was done to obtain the attendance of said witness. He further states that the copy of the record was not certified according- to the acts of Congress, but was identical with the one offered by the state to prove the first marriage.
We see no error in the ruling;-
*759 Rill of Exceptions No. 5.
[7] Tins bill was reserved to the exclusion of part of the record in the divorce suit by the second wife against defendant, including application, commission, and interrogatories to be propounded to the witness J. M. Perry, together with letters from Perry to Kowalski, and from Perry to the clerk of court of Cal-casieu parish, all of which (except the letter of Perry to Kowalski) were objected to by the state for the reason that same were irrelevant and immaterial. Defendant declined to introduce the letter from Perry to Kowalski by itself, though no objection was made thereto, and defendant had ample opportunity to cross-examine Perry in regard to the same, who was a witness at the trial. The offerings were made for the purpose of impeaching Perry, but we can see nothing in them which could have had that effect; and the objection was therefore properly sustained.
Bill of Exceptions No. 6.
[8] Defendant offered in evidence certified copy of a civil proceeding in the district court for Matagorda county, Tex., to show that the witness Rosalie Asbury had been enjoined from slandering, etc., a Mrs. Gustaf-son, for the purpose of impeaching the credibility of said witness, who had sworn that she had not been so enjoined, which was objected to by the state as irrelevant. There was no showing that the papers had ever been served on the witness, or that she knew of them; and, besides, she could not be impeached on an irrelevant matter. There was no error in the ruling.
Bill of Exceptions No. 7.
[9] Defendant sought to show by cross-examination of one O. J. Doubreck, a witness for the state, that Mrs. Gustafson, the plaintiff in the suit referred to in bill No. 6, was a woman “whose character was above reproach,” “offered for the purpose of showing the animus of said witness [Asbury] toward defendant,” which was objected to by the state as irrelevant and immaterial, and sustained. There was no error. »
Bill of Exceptions No. 8.
[10] This bill relates to language alleged to have been used by the district attorney in the closing argument for the state as follows:
“Defendant is the only witness in his behalf, and the jury has' a right to consider his personal interest in the case,” which was objected to by defendant “on the ground and for the reason that it prejudiced the minds of the jury against defendant, * * * since his reputation had not been attacked, and no attempt had been made to impeach said witness on the trial of said cause, but, on the contrary, his reputation had been admitted to be good,” etc.
The judge’s per curiam states that the language attributed to the district attorney is not correctly quoted? that it was to the effect that the jury were the sole judges of the credibility of all witnesses who had testified on the trial; that, the defendant having taken the stand in his own behalf, he was subjected to the same rules as applicable to' any other witness, and that the jury therefore had a right to consider the interest which he had in the result of the trial; that the jury ought not, therefore, to give greater weight and credit to the unsupported testimony of the defendant than to all of the other disinterested witnesses who had testified for the state.
We can see little or no difference, in effect, between the remarks attributed to the counsel for the state by counsel for the defendant and the substance thereof given by the judge. If anything, the statement by the court makes the attack upon the defendant as a witness stronger than that of defendant’s counsel. However, we know of no law which prevents the counsel for the state *761 from commenting in a reasonable manner upon the testimony of an accused, when be bas become a witness in bis own defense. As a witness be subjects bimself to all of tbe rules and legitimate criticism of any other witness, tbougb bis character as an accused cannot be assailed, except when it is placed in evidence.
We find no error.
Bill of Exceptions No. 9.
[11] This bill of exceptions covers an alleged charge by tbe lower court to tbe jury. We are informed by tbe per curiam that no request for a written charge was made, and tbe same was given orally. It also adds:
“Tbe judge bas no means of knowing whether he has been correctly quoted.”
The charge as quoted by counsel, we are informed by tbe court, purports to have been taken down by counsel for tbe defendant in shorthand notes at tbe time it was given, but be (tbe court) bas no way of verifying same.
Tbe charge complained of bas not been properly established for our consideration. Defendant bad tbe right to require that tbe charge be given in writing, and having failed to do so, and tbe court declining to approve tbe language attributed to it, we are unable to consider tbe matter.
Bill of Exceptions No. 10.
[12] This bill presents another conflict between tbe statements of tbe counsel for defendant and tbe court. It is based upon tbe contention that tbe jury was coerced into rendering a verdict of conviction. Tbe per curiam informs us that tbe case was given to the jury about 3:30 p. m., and that between that time and 9 o’clock p. m. two reports were made of their failure to agree, each at tbe inquiry of tbe judge, one about 6 o’clock p. m., for purpose of ascertaining whether it would be necessary to provide supper for them, and tbe other about 9 p. m., to determine whether it would be worth while to bold tbe court open any longer before adjourning for tbe night; that adjournment was taken about 9:20 p. m., and on tbe convening of court next morning at 9 o’clock tbe jury promptly returned its verdict.
There is no merit in this bill.
Bill of Exceptions A.
[13] This bill covers tbe refusal of tbe judge to permit tbe deputy sheriff, in charge of tbe jury, to testify to the number of times they requested him to report to tbe court their inability to agree upon a verdict; also tbe offer of counsel for defendant to give similar testimony, objected to by tbe state, and sustained by tbe court for tbe reason that tbe testimony “was inadmissible for any purpose whatever.”
We will not go as far as did the lower court in bolding that such evidence cannot be received for any purpose; for, while ordinarily we take the statement of tbe judge as to what transpired, when the facts are not recorded at tbe time, still we cannot hold that there is no other method of getting the real facts before this court. Such a bolding would place tbe accused wholly at tbe mercy of tbe judge’s recollection, however erroneous it might be. Tbe proper course, especially an tbe trial of a motion for a new trial, is to admit tbe evidence, and allow this court to determine whether or not there bas been any improper conduct on tbe part of the lower judge or jury. However, tbe minutes of tbe court and other proof in tbe record show that this jury were not sequestered an unreasonable length of time — part of one afternoon and night — and in these circumstances it makes no difference bow often they reported their inability to agree and asked to be discharged. This court will not interfere except in a case of clear abuse.
*763 The error was not sufficient to justify a reversal.
Bill of Exceptions B.
[14] On the hearing of the motion for a new trial defendant tendered one Frank Perkins, who was the foreman of the jury in this case, “for the purpose of showing there was misconduct on the part of the jury, as shown by the bill of exceptions reserved at the time, and in support of the allegations of the motion for a new trial on said subject-matter, and for the purpose of showing that a majority of the jurors attempted to override the will of the minority, that said jurors insisted upon rendering a verdict in order to be kept from being locked up further, and that the jurors were prejudiced against the defendant because testimony had been offered to the effect that he was a German,” which was objected to by the counsel for the state on the ground that a juror could not be heard to impeach his own verdict.
The ruling was correct, in view of the general character of the allegations of the motion, no charge of force or violence having been made that would induce any juror to render a verdict to which he did not willingly agree. The per curiam further informs us that the only testimony as to defendant’s nationality was given by himself.
Bill of Exceptions O.
This bill was -reserved to the overruling of the motion for a new trial. The motion was based upon the allegation that the verdict was contrary to the law and the evidence, as well as all of the various matters and rulings embraced in the 12 bills of exception heretofore referred to and disposed of, as well as the following:
[15] (1) Because the alleged first wife was permitted to testify against defendant.
The per curiam informs us that no. objection was made to her testifying at the time her evidence was given, and the objection comes too late when made' for the first time in a motion for a new trial. Act No. 157 of 1916 permits, but does not compel, one spouse to become a witness for or against the other, and, the witness having testified without objection, defendant cannot complain after conviction.
(2) Because the wife was permitted to testify in detail to private relations between the spouses. No objection was made at the time, and the same came too late-when urged in a motion for a new trial.
Defendant further alleged that he had not had time to complete his investigation and to furnish the affidavits of certain witnesses in regard to certain matters which had transpired in the state of Texas, which it was desired to prove in order to affect the credibility of the witness Rosalie Asbury, and asked that he be given time within which to make said investigation, and allowed to amend the motion after doing so; that he expected to obtain an affidavit showing that a bartender by the name of E. A. Bishop resided at Mission, Tex., while the prosecuting witness, Rosalie Asbury, lived there, and that she was well acquainted with him, which had been denied by her, and that the said witness did not live with defendant as his wife, but as his concubine, which was well known in said community; that he also expected to prove by one William Belling-hausen, of Brownsville, Tex., that he is well acquainted with defendant, and that from February to April, 1913, he and defendant resided together at a boarding house in said city; that defendant slept there; that he was never known as F. A. Bishop, and was never known to have lived with a woman under that name; that he always went by the name of A. Bischoff, and that said Bell-inghausen had occasion, while working for the same company, to apply to the said Bischoff for requisitions for materials, etc., *765 and knew him well, and never knew of his going by any other name; that he expected to prove by one S. P. Eatton, justice of the peace at Harlingen, Tex., that the said Rosalie Asbury made an affidavit against a Mexican for the theft of certain jewelry in the name of Mrs. Antonio Gonzales or Rosalie Asbury; that he expected to prove by Judge W. S. Holman, of Bay City, Tex., that he was well acquainted with Rosalie Asbury, and that she was an eccentric person, addicted to the use of drugs and other narcotics, was a disturbing element in the community, and that her reputation for truth and veracity was bad; that she did not teach school, and left Bay City to escape the service of. process instituted against her in the district court, of which he was judge; that the applicant in the motion for new trial desired to take the testimony of the deputy sheriff in charge of the jury in regard to the matters complained of in bill of exceptions No. —.
Finally that defendant was entitled to a new trial on the ground that no proof was offered by the state in support of its allegation in the bill of information negativing prescription, and that it was incumbent upon the state to adduce proof that the offense alleged had not been brought to the attention of a public officer or officer authorized to prosecute the same within the 12 months pri- or to the filing of the bill.
Defendant was subsequently allowed to amend his motion for new trial and to attach the affidavits of the various persons mentioned as to the matters referred to in the motion.
[16] The motion and amendment, together with the exhibits, do not disclose any newly discovered material facts, which might not have been furnished by the exercise of due .’diligence on the former trial, and there was no error in overruling the motion for a new trial on that score.
[17] This leaves the only remaining question to be considered, and that is whether or not the state was required to make proof of the fact as alleged in the bill of information that the commission of the offense had not been brought to the attention of an officer authorized to prosecute within the time during which prescription would have otherwise run. Apparently there was no charge to the jury on this score, and none seems to have been requested by either side; the matter being raised for the first time in the motion for a new trial. However, the lower judge admits in his per curiam that no proof was offered by the state in support of that allegation of the information, but states that he overruled the motion for new trial on the point because the burden was upon the defendant to prove that the offense had been brought to the attention of an officer authorized to prosecute within the year after its commission. The matter involves, primarily, a question of fact, and the issue should have been raised by requesting the court to charge that, unless such proof were administered by the state (granting that defendant’s contention is correct), then they should acquit because of the failure to make out its ease against defendant, with proper exception reserved to the refusal of the court to give such charge. However, we take it, from the position taken by the judge in ruling on the point in the motion for a new trial, that such a request would have been refused; and, since it is admitted that no such proof was administered, we think we are justified in passing upon the question.
No formal plea of prescription was filed, but under the peculiar wording of our statute, and in view of the fact that the plea of not guilty puts at issue every sacramental allegation of the information or indictment, we think no such plea was necessary.
Section 986 of the Revised Statutes reads I as follows:
*767 “No person shall be prosecuted, tried or punished for any offense, -willful murder-, arson, robbery, forgery, and counterfeiting excepted, unless the indictment or presentment for the same be found or exhibited within one year next after the offense shall have been made known to a public officer, having the power to direct a public prosecution. * * * ”
We have uniformly held that, unless the indictment or information negatived prescription ,on its face (that is, if the offense was committed .more than 12 months prior to the finding of the bill), no offense was charged. State v. Drummond, 132 La. 749, 61 South. 778; State v. Conega, 121 La. 522, 46 South. 614; State v. Hoffman, 120 La. 953, 45 South. 951; State v. Foley, 113 La. 206, 36 South. 940; State v. West, 105 La. 639, 30 South. 119; State v. Hinton, 49 La. Ann. 1354, 22 South. 617; State v. Pierre, 49 La. Ann. 1159, 22 South. 373; State v. Wren, 48 La. Ann. 803, 19 South. 745; State v. Davis, 44 La. Ann. 972, 11 South. 580; State v. Joseph, 40 La. Ann. 5, 3 South. 405; State v. Robinson, 37 La. Ann. 673; State v. Victor, 36 La. Ann. 978; State v. Vines, 34 La. Ann. 1073; State v. Morrison, 31 La. Ann. 211; State v. Williams, 30 La. Ann. 842; State v. Snow, 30 La. Ann. 401; State v. Hall, Man. Unrep. Cas. 240; State v. Forrest, 23 La. Ann. 433; State v. Bryan, 19 La. Ann. 435; State v. Peirce, 19 La. Ann. 90; State v. Bilbo, 19 La. Ann. 76; State v. Freeman, 17 La. Ann. 69; State v. Foster, 7 La. Ann. 255; State v. Cobbs, 7 La. Ann. 107. The effect of this ruling is to say that, although the statute does not say in so many words that prescription shall begin to run, in the absence of a different showing in the bill, from the date of the commission of the offense, such was the intention of the lawmaker; and this interpretation has become the settled jurisprudence of this court. The law does not say merely that the offense shall be prescribed, but that “no pérson shall be prosecuted, tried or punished, * * *” indicating that, if it be brought to the attention -of the court at any time, from the initiation of1 the criminal proceedings to the end of the punishment, that the charge was not preferred within the period provided by the statute, the proceedings should be abated; and this would seem to justify the conclusion which we have heretofore reached that we might consider the matter, even though raised for the first time in a motion for new trial.
If it be necessary that the state should negative prescription in order to state a cause of action against an accused, why then, under the elementary principles of law, pleading, and evidence, does it not have to administer the proof to conform to or sustain that pleading? Of course the question of when the charge was found does not pertain to the guilt or innocence of the accused, but it does affect very vitally the issue of whether or not he is guilty of a crime of which he can be tried, convicted, or punished; in other words, the jury are powerless to try, and the judge is without power to punish, “unless the indictment or presentment for the same' be found or exhibited within one year next after the offense shall have been made known to a public officer having the power to direct a public prosecution.” This proof not having been made in the present case, the verdict of the jury and the sentence of the court were in violation of the prohibitory provisions of the law, and therefore without effect.
We cannot reconcile the conclusions reached herein with the holding in the cases cited in the brief of counsel for the state, to wit, State v. Barrow, 31 La. Ann. 691, State v. Barfield, 36 La. Ann. 89, etc., in which it was held that, inasmuch as the charge that the offense was not made known to an officer au-thoz-ized to pi-oseeute was a negative, easier for the defense to establish than for the state, and that the latter was not required to prove a negative, it cast the burden on the defendant. The fallacy of this view is shown *769 when it is realized that in most criminal cases the accused denies the commission of the offense, and to make proof of the fact that it was committed and accordingly brought to the attention of a proper officer would not only be inconsistent, but dangerous, especially before a jury, in event he failed to establish the facts to support the contention that prescription had run. Even in civil matters the plea of prescription necessarily admits, for its purposes, that the right or debt once existed; and juries would not readily appreciate the fine distinctions which are made in law that facts may be admitted for limited purposes.
For the reasons assigned, the verdict and sentence appealed from are annulled and reversed, and this case is hereby remanded to the lower court to be proceeded with according to law.
O’NIELL, J., dissents from the ruling on bill of exceptions No. 9 that this court cannot consider an erroneous charge ..given to the jury when the defendant did not ask for a written charge, and the trial judge declares in his per curiam merely that he “has no means of knowing whether he has been correctly quoted” in the bill, and dissents also from the ruling on bill of exceptions C that the state should have proven to the jury that the commission of the offense was not known to a public officer having authority to direct a public prosecution as long as a year before the finding of the indictment.