## No. 14,075.

## STATE OF LOUISIANA vs. GEORGE THOMPSON.

### SYLLABUS.

This being an appeal, from a conviction of murder and sentence of death, in which it appears that the prosecuting officer, in his closing argument, referring to the widow of the deceased, who had been examined as a witness for the State, said: "I will say nothing to you of her six fatherless little children;" that counsel for the accused objected and excepted, on the ground, sustained by the fact, that no evidence had been offered concerning such children; that the prosecuting officer, without disclaimer, proceeded with his argument, upon other grounds; that no action was taken by the trial judge, and that the jury was not instructed, either at the moment, or in the charge subsequently given, to disregard the unauthorized reference complained of. And the matter being brought to the attention of this

court by means of the bill of exceptions taken to the statement so made and of a bill taken to the refusal of the court *a qua* to grant a new trial, the verdict and sentence are set aside, notwithstanding that the counsel for the accused made no demand that the jury be particularly instructed in the matter.

APPEAL from the Criminal District Court, Parish of Orleans.— *Chretien, J.*

*J. Ward Gurley,* District Attorney, and *S. A. Montgomery,* Assistant, District Attorney, for Plaintiff, Appellee.

*James T. Nix* and *John D. Nix,* for Defendant, Appellant.

STATEMENT.

The opinion of the Court was delivered by

MONROE, J. The defendant, having been convicted of murder and sentenced to death, has appealed to this court, and relies upon the following bills of exception, as affording grounds for the reversal of the verdict and judgment appealed from, to-wit:

"Be it remembered that on the trial of the above entitled and numbered case, Hon. S. A. Montgomery, assistant District Attorney, in his closing argument, referred to six fatherless children, in his appeal to the jury, when there was no evidence in the case about any children of any kind, as is shown by the testimony of Mr. S. A. Montgomery himself, hereto annexed." (Whereupon counsel for the accused objected and excepted.

To this statement the Judge *a quo* adds: "The testimony of the District Attorney, made part of this bill, shows exactly what did take place during the argument of the case. When the protest was made, the District Attorney stopped all reference to the subject-matter, and the argument continued upon other grounds. There was nothing for the Court to pass upon, as the protest was heeded. I do not believe that any injury was done to the accused in this case."

The testimony, made part of the bill, is as follows:

"Q. Mr. Montgomery, will you please state what you said in your argument in reference to the six children of the deceased, before the jury, in this case? A. I remember it, I believe; the widow had been introduced by the State, I believe I said in the argument, by the

State—to identify the body that died at the hospital—Mr. Nix, in his argument, referred to her having been brought in, in her widow's weeds. I think I said this: 'I will say nothing to you of the six fatherless little children,' or that expression. Q. Referring, of course, Mr. Montgomery, to their being made fatherless by the defendant having murdered their father? A. Referring to your reference to the widow's weeds, as the widow in question was the wife of the man Thompson was accused of killing, and she was not on the stand. Q. There had been no evidence introduced in reference to any of those children? A. None whatsoever. Q. There was no other witness that testified anything about those children? A. As I remember it, the State introduced nothing about those children. Q. And to which you made reference? A. Yes, sir. Q. Counsel for defendant objected to this line of argument? A. Well, as I remember it, at the point where I said, 'in discussing those six fatherless children,' I believe the counsel for the defense objected, calling the Judge's attention to it, and asked for the stenographer. I know, however, that there was no stenographer present, and no stenographer was produced. I have no recollection as to whether the Judge stopped me or not. My impression is, however, that he did. If he did, I don't know what he said. I know you took exceptions to what I was saying. Q. Didn't I take a bill of exceptions to what you were saying? A. Yes, I believe you did, and asked to have the note of exceptions recorded in lieu of a bill."

A motion for new trial was made, upon the grounds which are here urged, and a bill of exceptions was taken to the refusal of the court to grant the same.

## OPINION.

There can be no question of the impropriety of the Assistant District Attorney's reference to the six fatherless children of the dead man, for the alleged murder of whom the defendant was on trial for his life, and the fact that their mother, the widow of the deceased, in her habiliments of woe, had previously been introduced, as a witness on behalf of the State, was a circumstance, which, so far from weakening the effect of the reference, was well calculated to prepare the jury for a deeper impression than might otherwise have been made by the pathetic mental picture thus presented to them, from beyond the record, in the closing argument for the prosecution. The counsel for the defendant objected and excepted and the assistant district attorney.

as the trial judge informs us, "stopped all reference to the subject matter, and the argument continued upon other grounds." But, why should he have gone further, even had no objection been made? He had informed the jury, not lawfully, but in plain violation of an elementary and universally recognized rule of law, that, by the death of the man whom the defendant in the case before them was charged with having murdered not only had the grief-stricken woman, whom they had seen, been deprived of her husband, but that six little children, whom they had not seen, and who were thus brought to their knowledge, at the close of the case, had been left fatherless. Conceding that six children had been left fatherless, and that they were little children, those facts had not been established, and could not have been estab· lished by sworn evidence, because such evidence would have been excluded, and yet, they went to the jury in the unsworn statement of the prosecuting officer, whom the counsel for the defendant could neither cross-examine nor answer in argument. The judge *a quo* states that, the protest of the defendant's counsel having been heeded, there was nothing for the court to pass on. The protest, it appears, was heeded to the extent that the prosecuting officer made no further reference to the subject which had provoked it, but "the argument continued on other grounds," with no disclaimer as to the truth of the statement which had been made, or as to the right of the speaker to make it, and it is not claimed that the judge, either at the moment, or in the charge subsequently given, instructed the jury that the statement, as made, met with his disapproval and was unauthorized, or should be disre· garded by them in considering their verdict. It is true that the counsel for the accused made no demand for such instructions, and it is also true that there is a weight of authority in support of the proposition that, even though unauthorized statements be made, in argument, the verdict of a jury will not be reversed, unless it appears that, in addition to objecting thereto, the party complaining has requested that the jury be instructed to disregard them, and has excepted to the refusal of the court to comply with his request. This jurisprudence is, however, predicated upon the theory that the failure of the complainant to exhaust the resources at his command in order to have the error of which he complains corrected, coupled with the non-action of the trial judge, is sufficient to justify the conclusion that no real injury has been sustained.

The general proposition is thus stated in a standard work: "It is a

well established rule that it is error, sufficient to reverse a judgment, for the court to suffer counsel, against objection * * * to comment on facts, calculated to prejudice, which have no bearing whatever upon the issues, and evidence of which would have been ruled out, or to assume, *arguendo*, such facts to be in the case, when they are not. * * * Such irregularities always justify the interference of the presiding judge, for the purpose of restraint, but are not ground for the granting of a new trial, by an appellant court, *where it appears that the party seeking it was not, under all the circumstances, materally prejudiced."* (Italics by the present writer.)

Ency. Pl. & Pr., Vol 2, pp. 727, *et seq.*

Upon the other hand there is ample authority in support of the doctrine that it is reversible error for the trial judge to fail, of his own motion, to give such instructions as will efface from the minds of the jurors .the impression made by statements of counsel which are unauthorized and prejudicial, and there are many cases in which it has been held that the wrong done is not remedied even by such instructions. Thus, in Nelson vs. Welch, 115 Ind. 270, it was said that such statements, *i. e.,* statements predicated upon matters *dehors* the record, "are, presumably, injurious and prejudicial to the adverse party, and the burden is upon the party offending to show that no injury resulted, or that all such steps were taken to prevent injury, as were proper under the circumstances," and that "where the party who is injured by the wrong calls for the intervention of the court, upon objections, it will not do for the court to remain silent, leaving the matter of misconduct with the offending party and the jury. The court is bound to interfere when so called upon, and, if an improper and injurious statement has been made, without excuse, the effect of it should be erased from the minds of the jury, then and there, by an emphatic admonition from the court. The jury should be made to understand that, in making the statement, counsel violated the propriety of his position, and that if they did not wholly disregard it they would violate their duty as jurors."

In Sasse vs. State, 68 Wis. 530, where the prosecuting attorney stated that the defendant had committed other crimes in foreign countries, a new trial was granted, although the court, subsequently, instructed the jury not to regard the statement. See, also, Scripps vs. Rielly, 35 Mich. 371; People vs. Ah Len, 92 Cal. 282.

And so, in construing Act No. 29 of 1896, which, while granting a

party accused the privilege of testifying in his own behalf, provides that his failure to testify shall not be construed against him, this court has held that it is reversible error for the district attorney to call attention to the fact that the accused has not testified in his own behalf which is not cured by the trial judge's telling the jury "that the right of an accused to testify was a privilege accorded to him, which he had a right to exercise, or not, as he saw fit, and that, if he testified, he subjected himself to all the rules which applied to other witnesses, and that his failure to testify, if he chose not to do so, was not to be construed for, or against, him," and by the district attorney's stating to the jury that the instructions given them by the court was the law." State vs. Marceaux *et als.,* 50 Ann. 1137.

In the case thus referred to the similar case of Yarbrough vs. State, 70 Miss. 593, was cited with approval. In that case, it appeared that "immediately on the prisoner's. counsel excepting to the language of the counsel for the State, the court instructed the jury that the district attorney was prohibited by law from commenting on the failure of the defendant to take the stand on his own behalf, and that the jury must not consider any such comment." The Supreme Court, of Mississippi, however, upon the trial of the appeal, said, "But this action could not, and did not, undo the wrong already done. The statute absolutely forbids any comment on the failure of the accused to testify, and it is the right of every person charged with crime to insist that he enjov that statutory immunity from criticism by hostile counsel." And the conviction was set aside. The prohibition of the Mississippi law was plain and positive, that of the Louisiana law, as was said by this court, in the case cited, "is inferential and consequential, but strong and clear." The prohibition of the common law, by which criminal prosecutions in this State are regulated, is, however, also strong and clear against the injection into a case of facts not established by the evidence and which would be inadmissible if sought to be introduced in that way.

The character of the able and conscientious officers by whom the defendant was prosecuted and before whom he was tried, puts the question of intentional injury to him entirely out of consideration. The statement complained of no doubt escaped the prosecuting officer without premeditation, and we note the expression, by the trial judge, of his opinion that the accused sustained no injury. But, whilst we think that opinion entitled to great weight, we find ourselves unable to

yield to it in this case, or to disabuse our minds of the conviction that, all the circumstances being considered, the defendant may have been seriously prejudiced.

It is, therefore, ordered, adjudged, and decreed that the verdict and sentence appealed from be set aside and annulled, and that this case be remanded to be proceeded with according to law.

MR. JUSTICE BREAUX, dissenting—I do not think that the hearsay statement of the district attorney was such as to influence the jury. I dissented in State vs. Marceaux, 50th Ann. 1138; and dissent in this case; the issues being similar.

PROVOSTY, J., takes no part, he not having been a member of the court when the case was submitted.