(38 South. 858.)

No. 15,694.

STATE v. ROSE.

(June 5, 1905.)

CRIMINAL LAW—ALLOTMENT OF CASES—WAIVER OF OBJECTIONS—AIDER BY VERDICT.

1. Where a case filed in the criminal district court of the parish of Orleans was through mistake placed in the wrong class, and was subsequently allotted or assigned to one of the two divisions of the court, and thereupon the accused was regularly arraigned, tried, and convicted, *held*, that objections to the allotment of the case came too late after verdict.

2. The only object of the constitutional requirement that cases shall be allotted in classes to be fixed by rules of court is to insure, as far as possible, an equal division of the same character of cases between the two divisions of the court. The erroneous classification of the particular case worked no prejudice to the accused, and his objections, if any, should have been pleaded in limine litis, so that the error could have been corrected by a reallotment of the case.

3. Necessity is the foundation of the doctrine of waiver, which is essential to prevent the miscarriage of criminal cases. Mere irregularities in the proceedings are cured by verdict.

(Syllabus by the Court.)

Appeal from Criminal District Court, Parish of Orleans; Joshua G. Baker, Judge.

Louis Rose was convicted of larceny, and appeals. Affirmed.

Warren Doyle, for appellant. Walter Guion, Atty. Gen., J. Porter Parker, Dist. Atty., and Samuel Alexander Montgomery, Asst. Dist. Atty., for the State.

LAND, J. Defendant was prosecuted on information charging that he did feloniously attempt to steal from the person of one James Teal $1.15, in the lawful currency of the United States.

Defendant was tried, convicted, and sentenced to five years at hard labor, under the provisions of Act No. 133 of 1904. Defendant's appeal was taken on two bills of exception, which contained the same ground of objection presented in a motion for a new trial and a motion in arrest of judgment, to the effect that the case was never properly allotted as required by the Constitution and rules of court, and therefore the trial judge was without jurisdiction.

It is contended that under the rules of the criminal district court the case should have been placed in class 2, as an offense necessarily punishable at hard labor, but was placed in class 3, as an offense which may be so punished. The affidavit on which the classification was made charged an attempt to rob by thrusting the hand into the pocket, with the felonious intent to steal, "in violation of section 811 of the Revised Statutes and Act No. 133 of 1904." The clerk charged with the duty of classifying cases understood the charge to be under section 811, known as the "Pickpocket Section," and therefore placed the case in class 3. As an attempt to rob is also an attempt to steal from the person of another, it may be assumed that Act No. 133 of 1904 has superseded section 811

of the Revised Statutes of 1870. The state, however, does not contest the proposition that the case should have been placed in class 2, but contends that the verdict is not affected by such an irregularity. Per contra, defendant contends that the defect goes to the jurisdiction of the trial judge.

In his per curiam, the judge says:

"The complaint here is not that the case has not been allotted, but simply that the allotment has been in the wrong class."

The judge was of opinion that every purpose in allotting cases had been carried out, and that, even if the irregularity was objectionable, it might have been cause for the reallotment of the case, but was not sufficient to set aside the verdict.

Article 139 of the Constitution of 1898 provides, inter alia, as follows:

"All prosecutions instituted in and all cases appealed to said criminal district court shall be equally allotted or assigned by classes, among the judges, and each judge, or his successor, shall have exclusive control over any case allotted or assigned to him from its inception to its final determination in said court except as herein otherwise provided."

The same article authorized the criminal district court to adopt rules regulating the method of allotting or assigning cases. In obedience to the provisions of this article, the court adopted rules for the allotment of cases; dividing them into four classes, and providing for the separate allotment of each case.

Article 130 of the Constitution of 1879 provided that all prosecutions instituted in the criminal district court of the parish of Orleans should "be equally apportioned" between the judges thereof "by lot." In State v. Addotto, 34 La. Ann. 1, the case had not been allotted at all; and the court held that the defect was jurisdictional, and that the objection made by the accused in his motion for a new trial was in time. In the same case the court said that the Constitution required an "equal apportionment by lot," meaning an "indiscriminate equal distribution or repartition among the judges by a re-

sort to chance." No classification of the cases was required under the Constitution of 1879. The present Constitution requires an equal allotment or assignment by classes, leaving the classification to be fixed by rules of court. The division of all cases into two classes would have satisfied the constitutional mandate.

The purpose of apportionment by lot is to prevent the selection of a particular division of the court for the prosecution and trial of certain cases or classes of cases. Under the Constitution of 1879, cases might have been allotted without regard to the nature and gravity of offenses, and an unequal portion of work imposed on one division of the court. For example, it might well happen that, in a purely chance allotment of cases as they were filed, all or nearly all of the graver cases might be assigned to one division of the court. The able and learned trial judge, who is thoroughly familiar with the practical working of the allotment system, says:

"The only object of the requirement that cases shall be allotted in classes is to insure, as far as possible, an equal division of the same character of cases between the two courts."

The error of the clerk in assigning the case to the wrong class worked no prejudice to the accused, and was a mere irregularity in the proceedings, not affecting the jurisdiction of the trial judge to whom the cause had been allotted. Such irregularity might have been good ground for reallotment, but we do not think that the accused, who acquiesced in the allotment, and took his chance of an acquittal, should be permitted to raise the objection after verdict. Such objection was purely dilatory in its nature, and, if made and sustained in limine, would have merely led to the reallotment of the case, with the equal chance of its falling to the same trial judge.

In State v. Jackson, 36 La. Ann. 96, the court held that objections to the manner of drawing and composing the grand jury must

be made before the plea and trial, and come too late after verdict. In that case it was alleged that the grand jury was illegally formed, and that at least one person who served on said jury had not been drawn on the venire. The court said:

"All such objections, when made after trial, are met by the consideration that an accused cannot be allowed to take his chance of an acquittal in a trial by an alleged defective jury, and, if convicted, to fall back on an objection which should have been urged before trial."

In the case at bar the objection is less weighty, as it does not go to the competency of the judge or to the jurisdiction of the tribunal, but to an irregularity in the assignment of the case. The case was allotted to the division of the court presided over by the trial judge after it had been placed in a particular class. To hold that error or mistake in the classification of a case had the effect of divesting the jurisdiction of the court, and nullified all the proceedings, including the verdict, is a conclusion not supported either by reason or authority. An accused may waive his constitutional, statutory, or common-law rights, except when forbidden by some superior counter principle of law deemed necessary for his protection.

"Necessity is the foundation for this doctrine. Without it a cause could rarely be kept from miscarrying." 1 Bishop, New Crim. Prac. 117–119.

Judgment affirmed.