(91 South. 740)

No. 25101.

STATE v. JORDAN et al.

(April 23, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law ⬤⟿1171(3)—Statement in argument held harmless.**

That the district attorney in his argument referred to a story that one W., evidently an attorney, told a witness in a certain case that there would have to be a knife in the defense, and then added that defendants' attorney had gone W. one better in that he had not only brought a knife into the case but lugged in a shotgun also, *held* not prejudicial; its object and purpose being to convince the jury that testimony for defendant was false, and not that defendants' attorney had suborned testimony.

2. **Criminal law ⬤⟿608—Evidence held to show sufficient service of copy of indictment and jury list.**

Evidence, on motion for continuance, *held* to show sufficient service of copies of the indictment and jury list on each of the defendants.

3. **Criminal law ⬤⟿627(6), 631(9)—Delivery of copies of indictment and jury list to one defendant in presence of other held sufficient.**

The delivery of copies of the indictment and jury list to one of the defendants in the presence of the other, with the statement that there was one copy for each, was a sufficient service; the two defendants being in the same cell and being on friendly terms.

4. **Criminal law ⬤⟿720(9)—Reference in argument to widow and children of murdered man not improper.**

Where decedent's widow and children had been on the stand and testified and placed before the jury as evidence to show the position of each member of the family the night of the homicide, the district attorney's reference in his argument to the fact that the widow with four small children in her charge was present was not improper.

5. **Criminal law ⬤⟿723(2)—District attorney may remind jury of heinousness of murder, etc.**

It is not improper for the district attorney to remind the jury of the heinousness of murder and impress the reminder by some object lesson, if he can do so without recourse to facts not proved and which he has no right to assume the jury have knowledge of.

6. **Criminal law ⬤⟿665(3)—Rule violated by stating what other witnesses had testified in examining witnesses.**

Where witnesses were put under the rule, it was a clear violation of the rule for the district attorney in questioning witnesses to state what he understood had been testified to by witnesses who had already been on the stand.

7. **Criminal law ⬤⟿1153(5)—Matters connected with putting witnesses under the rule are in the court's discretion.**

Putting witnesses under the rule and all matters connected therewith are matters within the discretion of the trial judge and not ground for reversal.

Appeal from Fifth Judicial District Court, Parish of Winn; Cass Moss, Judge.

Colbert Jordan and another were convicted of manslaughter, and they appeal. Affirmed.

Huey P. Long, of Shreveport, for appellants.

A. V. Coco, Atty. Gen., Earl E. Kidd, Dist. Atty., of Winnfield (John J. Peters, Jr., and Harry Fuller, both of Winnfield, and T. S. Walmsley, of New Orleans, of counsel), for the State.

By Division A, composed of Chief Justice PROVOSTY, and Justices OVERTON and LECHE.

PROVOSTY, C. J.  On an indictment for murder, the accused, Colbert and Onnie Jordan, were convicted of manslaughter, and sentenced to not less than 18 and not more than 20 years at hard labor; and have appealed.

[1] Testimony having gone to the jury that some three hours before the homicide the decedent had a large knife, and had threatened to use it on accused, and that decedent was reaching for a shotgun when killed by accused, the district attorney in commenting upon this evidence, in his closing argument, "told of an incident where Mr. Wallace had asked a witness if the defendant had a knife, and the witness stating that he didn't know, Mr. Wallace stated that there would have to be a knife in the defense. Then the district attorney stated that Mr. Long had gone Mr. Wallace one better; that he not only brought a knife into the case, but had lugged in a shotgun also by the testimony of Mr. Jordan."

The learned counsel for accused saw in this the introduction of new facts before the jury, and an accusation against him of having procured false testimony.

There was, no doubt, an introduction of new facts, since no witness had testified (so far as the record shows) to the said alleged episode in Mr. Wallace's life. But these new facts were not of a nature to prejudice the case of accused. What Mr. Wallace had done or said in some case in the past could not prejudicially affect the case of accused before a jury of even mediocre intelligence. This Wallace story was, no doubt, one of the kind with little or no foundation in fact, such as oftentimes become current, no one knowing how, in connection with eminent men; and which are useful for setting off, or giving point to, an argument. And evidently this was the use the district attorney was making of this story; as an orator uses some bit of history with which he assumes his auditors are familiar.

If thereby he had meant to assert that opposing counsel had suborned the witness, such a statement, founded on no proof, would have been highly reprehensible; but the learned trial judge did not so understand, nor do we, and the jury would have been dull indeed for so understanding. The statement that Mr. Long had gone Mr. Wallace one better meant no more than that the case which accused Jordan had sought to make out by his testimony had gone Mr. Wallace one better. It was only by a figure of speech that Mr. Long was said to do this. He being the attorney in the case, the case was said to be his. The district attorney must be given the credit of possessing ordinary common sense, and therefore of knowing that, in view of Mr. Long's high standing, a charge of suborning testimony, if made against him without any foundation whatever for it, as would have been the case in the present instance, could only prejudice the case of the maker of the charge, and not Mr. Long or Mr. Long's case. The whole object and purpose was to convince the jury that Jordan's testimony was false, and not that Mr. Long had done anything wrong.

[2, 3] When the case was called for trial, the accused moved for a continuance, on the

ground that they had not been served with a copy of the indictment and a copy of the jury list two days before the trial. In support of this motion, they testified that the sheriff came to their cell with these four copies rolled or folded into one and handed the package to Onnie Jordan, saying to him, "Here is one for one and one for the other." Colbert Jordan further testified that he was reading at the time, and that he does not know what became of the papers; that he did not see them after this. Onnie Jordan testified that he and his brother were sitting on the bunk reading out of the same book, when the sheriff came, and that he (Onnie) took the papers and turned around and pitched them in his violin case. The sheriff testified:

"I got to the cell door, and Colbert was standing in the door, and the other one was over there not three feet away. I had a copy of the venire and a copy of the bill of indictment for each one. I handed in both of them one at the time and told them that there was one for one and one for the other. I handed them in at the door and one of them taken them both. Q. And Onnie Jordan got them both? A. Yes, sir. Q. Did Colbert get a copy? A. Yes, sir; Colbert got a copy. I could not swear positively that he handed it to him, but he turned around, and he may have dropped it on the floor. * * * I told them there was a copy of the bill of indictment and a copy of the venire list. Q. What was Colbert Jordan doing when you went up there? A. He was standing in the door. Q. Facing you? A. Yes, sir. Q. While you were handing the papers to Onnie Jordan, he was looking at you? A. Yes, sir."

In this matter we believe the sheriff and find that the service was sufficient. And, moreover, think it was sufficient even accepting the testimony of the two accused, since the papers were delivered to one in the presence of the other in this cell with the statement that there was one for each; and since the two brothers were friendly. We do not know that there is anything sacramental in the manner of serving such papers.

The statute merely requires that the accused shall have a copy delivered to him. The purpose is to bring the papers to his knowledge and to afford him an opportunity of having them. This purpose was accomplished by the delivery of the papers to one of the brothers for both in this narrow cell, with the explanation that there was one copy for each; the other brother seeing the papers delivered and hearing the explanation.

[4, 5] The widow and children of the decedent sat within the railing, after they "had been on the stand and testified, and had been placed before the jury as evidence, to show the position of each member of the family and deceased the night of the homicide." In the course of his argument the district attorney said:

"It is unfortunate that to my left is sitting the widow of decedent, with four small children in her charge."

There can be no harm in the district attorney reminding the jury of the heinousness of murder; and impressing the reminder by some object lesson, if he can do so without having recourse to facts not proved, or which he has no right to assume the jury have knowledge of. In the present case the facts used had appeared in the evidence and were before the eyes of the jury. The district attorney has the right to argue that the accused is guilty of murder; and he has the right to point to the fruits of murder if they are before the eyes of the jury. What this court condemned in State v. Thompson, 106 La. 362, 30 South. 895, was the district attorney's having gone out of the record for doing what in this case the district attorney did without going out of the record. It was the going out of the record that was condemned in that case.

[6, 7] Although the witnesses had been put under the rule, the district attorney in questioning his witnesses would state to them what he understood the witnesses who had

already been on the stand had testified to. We think this was a clear violation of the rule. However, the rule itself and all connected with it are matters within the discretion of the trial judge, and not matter for reversal. Marr's Crim. Juris. 713.

Judgment affirmed.