ST. PAUL, J.
 

 The defendant was convicted of, the murder of one Miss Mildred Thomas, and sentenced to death. His appeal presents 31 formal bills of exception, a formal assignment of errors, and one informal suggestion (by brief) of alleged error patent on the face of the record.
 

 I.
 

 We quote sufficient from the
 
 per curiam
 
 of the trial judge to bill No. 10 to state the case and facilitate an understanding of some of the bills of exception hereinafter considered, to wit (transcript, 113):
 

 “The testimony in this case showed that the deceased, Miss Mildred Thomas, a young lady 18 or 19 years old, attended with the accused the marriage of his sister by a country magistrate, the ceremony being some time between 9 [and 11] o’clock p. m. on Friday, May 27, 1927. He was next seen with the deceased between 5:30 and 6 o’clock a. m. next morning driving towards Monroe in a Ford touring car with the top off or down, with the deceased leaning either against him or the back of the seat with her head bent down. The accused had on no hat and no shirt, and, to use the expression of one witness, was in his B. V. D.’s from his waist up. He was seen at several places on the roa<^ to Monroe. He stopped near a well near a filling station about four miles west of Monroe. He lived at this place with his parents. He had no shirt when he came, but had on a
 
 *853
 
 shirt when he left going towards Monroe. Arriving in Monroe, the accused took the deceased to the residence of Dr. J. T. French at between 6:30 and 7 a. m. He stated to Dr. French that he had had an automobile wreck, and that the deceased had been in her then condition, which was unconscious, since between 10:30 and 11 o’clock of the previous night. Dr. French directed him to go to the Riverside Sanitarium. Dr. French followed him. The deceased died in the sanitarium shortly after she arrived; Dr. French stating that she died about ten minutes after he arrived. The deceased died of a broken skull. There was a lump low behind her left ear, where she had been injured, the fracture of the skull extending from this point upward and forward. The skin was not broken at this point. * * * ”
 

 The contention of the state was that the defendant, in committing a rape, or attempting a rape, had thrown the deceased to the ground, and that in falling she had struck her head on a small pine log. and fractured her skull.
 

 The contention of the defendant was that on the way back, after the marriage of his sister, at a point some 30 or 40 miles from Monroe, a tire blew out, and the right front wheel of the automobile broke; that, when the wheel broke, the deceased jumped from the moving car, and fell to the road, this being some time after midnight; that the deceased arose', and claimed not to be hurt much; that she sat by him, and walked around whilst he was fixing the broken wheel; that it took him some time to fix the wheel and they then started again towards Monroe; that the deceased was conscious until they reached West Monroe, and became imconscious only just before he took her to Dr. French.
 

 II.
 

 On May 30th the grand jury was called in special session for June 6th. On June 8th it indicted defendánt for murder, and on the same day Mr. Zach T. Heard was appointed to represent him. On June 11th the defendant was arraigned, with his counsel present, and pleaded not guilty, and the case was fixed for trial for July 5th. On the same day a venire of petit jurors was ordered drawn, for service “during the week beginning on Monday July 4, 1927, said jurors to be summoned to appear for service on Tuesday July 5, 1927.”
 

 On Monday June 27th Messrs. Thomas O. Newton and Sterling M. Newton were appointed counsel to assist the defense.
 

 III.
 

 On Tuesday July 5th the case was called for trial before Hon. Percy Sandel, one of the judges of the Fourth, judicial district court, “accused being present in person, and represented by Hons. Zach Heard, Thos. O. Newton, and Sterling M. Newton.”
 

 When the case was called, the attorneys for the defendant asked permission to with-' draw the former plea of not guilty for the purpose of filing a motion to quash the venire of petit jurors. The court permitted the filing of the motion to quash, and agreed to pass upon the same, but would not permit the plea of not guilty to be withdrawn for that purpose. (Bill No. 26, first part.)
 

 The court then ordered the jury called for the purpose of ascertaining who was present and hearing excuses; to which counsel for the defendant objected until their motion to quash had been disposed of, but were overruled. (Bill No. 25, first part.)
 

 The motion to quash was then taken up, tried, and overruled. (Bill No. 26, second part. Bill No. 25, second, part.)
 

 Counsel for the defendant then moved for a continuance, which was refused. (Bill No. 24.)
 

 IV.
 

 At noon on July 5th, because of an agreement entered into between the state and the defense, Judge Sandel resigned the bench to Judge J. T. Shell, the other judge of said Fourth judicial district, in order that Judge Sandel might attend the funeral of his brother-in-law.
 

 
 *855
 
 Whilst Judge Shell presided, the impaneling of the jury began, and ten jurors were accepted (including one H. H. Blanks, Jr., of whom more hereafter); and the defense exhausted its twelve peremptory challenges.
 

 During the time Judge Shell presided eight bills of exception were taken, to wit, Nos. 11, 21, 9, 5, 7, 8, 22, 23, which will be considered in due course.
 

 V.
 

 About noon Wednesday July 6th Judge Shell retired, and Judge Sandel resumed the bench without objection. The jury was then completed and sworn, the indictment read, and the jury put in charge of the bailiff. The trial was taken up next morning, Thursday July 7th; and Judge Sandel presided continuously until the verdict was brought in.
 

 We have given the'course of the trial somewhat in detail, as some of the bills of exception will thereby be better understood.
 

 At this point we may as well dispose of bill of exception No. 3 (transcript, 79) taken before Judge Sandel when the eleventh juror, W. H. Byrd, was accepted. The bill presents nothing for consideration; it. consists of a statement that defendant, having exhausted his peremptory challenges, found himself forced to accept the juror, and statement by the court tk^it the juror was not challenged in any way, whether for cause or otherwise.
 

 VI.
 

 Bill No. 26, first part (transcript, 208). The refusal of the trial judge to permit the withdrawal of the plea of not guilty in order to allow defendant to file a motion to qua'sh the venire of petit jurors, if it was error at all, did not prejudice the defendant, since he was allowed to file his motion to quash, and that motion was heard and passed upon by the court.
 

 Bill No. 25, first part (transcript, 199). It was permissible and proper for the trial judge to call the jury for the purpose of ascertaining who was present and hearing excuses before proceeding with the other business of the court. There was no reason whatever to keep jurors in court who were entitled to be discharged, and there was every reason to find out at once who was present in order that absentees might be brought in without delay, so that trials should not be retarded on account of their absence.
 

 Bill No. 26, second part; hill No. 25, second part. The motion to quash the venire of petit jurors was properly overruled, (a) The court week during which they were called to serve was. properly designated as the week beginning Monday July 4th, even though July 4th was a holiday; and the jurors were properly notified to appear on Tuesday July 5th, which was not a holiday. (b> Nor does it signify in the least that the jurors may have known that they were called to serve in this defendant’s case, for, even if the court had but that one case before it, it was still necessary to call jurors to try it, but the trial judge says there were other criminal cases set for trial that week.
 

 Bill No. 24 (transcript, 188). The matter of granting continuances rests in the sound discretion of the trial judge. In this-case it was not abused. We have shown above that Mr. Heard was appointed four weeks (less one day) before the day fixed for the trial, and other counsel were appointed to assist him eight days before the trial. Mr. Heard had thoroughly familiarized himself with the case, and his own testimony is that, though he had been sick, yet his physicians thought he was sufficiently recovered to go through with the trial; and the fact is that . he did take an active part in the conduct of the case. That the counsel appointed to assist him were not able to inform themselves as fully as he was does not change the fact that the accused was represented by counsel who had opportunity to, and did, inform himself fully about the case.
 

 
 *857
 
 VII.
 

 The' eight bills taken before Judge Shell, ■during the impaneling of the jury, were as follows:
 

 Bill No. 11 (transcript, 123). When the jury was about to be drawn, a box was brought into court marked “Sheriff’s Box, Monday July 4, 1927,” and defendant objected to its being opened, because there was nothing to identify it as the jury box, and, if it was the jury box, it was not properly and legally labeled. It is quite true the jury box should have been labeled “Jury Box,” and not “Sheriff’s Box”; but the box produced was identified as being in fact the jury box, and containing the regular panel of jurors for the week beginning Monday July 4, 1927, and there is no pretense that there was any fraudulent purpose in this, or suggestion as to how the accused could be irreparably injured by this clerical error. It was therefore no ground for setting aside the venire. Act 135 of 1898, § 15; State v. Bagwell, 154 La. 980, 98 So. 549.
 

 Bill No. 21 (transcript, 179). When three jurors had been selected, the regular panel was exhausted. The court then ordered the clerk to draw 50 tales jurors from the tales jury box and serve a list of them on defendant ; to which order defendant objected, “for the reason that defendant did not consider said order a legal order.” The order was strictly according to law. Act 182 of 1914, amending section 11 of Act 135 of 1898.
 

 Bill No. 9 (transcript, 105). Defendant objected to the calling of the above-said tales jurors, on the ground that a correct list of them had not been timely served upon him. The record shows that he was served with a list of said jurors as soon as they were drawn, but that said list was found to tontain a clerical error in the middle initial of two talesmen, whereupon a correct list was served upon him before proceeding with the selection of the jury. The bill has no merit. State v. Washington, 108 La. 226, 32 So. 396.
 

 Bill No.
 
 5 (transcript, 85). J. D. Hamilton was challenged for cause. He stated that he had an impression about the case, not a fixed opinion, gathered only from street talk and newspaper reports, and which would readily yield to the evidence; that “if no evidence at all” was introduced he would be governed by his impression. But, on being told that the law presumed the defendant to be innocent until the state had proved his guilt beyond a reasonable doubt, he said he would disregard what he had heard outside, and try the case on the sworn evidence and the law as given him by the court. The juror was "therefore competent. State v. Genna, 163 La. 701, 112 So. 655, citing State v. Birbiglia, 149 La. 4, 88 So. 533; State v. Rini, 153 La. 57, 95 So. 400; State v. Holbrook, 153 La. 1025, 97 So. 27; State v. Roberson, 159 La. 562, 105 So. 621. See, also, State v. Bouvy, 124 La. 1054, 50 So. 849. (This juror was peremptorily challenged.)
 

 Bill No. 7, first part (transcript, 94). When the juror Phil Smith was being examined, the court' instructed him that the law required him to go into the jury box with a free mind, disregarding entirely any opinion which he might have formed, whether for or against the accused, and basing his verdict entirely on the evidence given by the witnesses and the law as given by the court; to which the defendant objected. It is perfectly proper for a judge to instruct a juror that he must try the accused according to the evidence given by the witnesses and the law as given by the court, entirely disregarding any impressions acquired from other sources, and that the law presumes the accused to be innocent until the state proves his guilt beyond a reasonable doubt, for such is the law, and it is the duty of the judge to instruct jurors as to the law whenever and however it may become necessary to do so.
 

 Bill No. 7, second part (transcript, 94). This juror was challenged for cause; he answered, in substance, the same as the juror
 
 *859
 
 Hamilton, ut supra, and the challenge was properly overruled (twelfth peremptory challenge used on this juror).
 

 Bill No. 8 (transcript, 100). When the juror V. S. Garnett was being examined, he was asked if from the nature of his work (not set forth) did he have any bias or prejudice in cases of this kind. The district attorney remarked that “every one is presumed to be prejudiced against the crime of murder,” and objected to the question as improper, to which remark the defendant objected as an attempt to prejudice the jurors already selected. The court directed tljp jurors to disregard the remarks of the district attorney, and ordered them expunged from the record. Thereupon the defendant objected to said remarks being expunged from the record, and accordingly they were
 
 not
 
 expunged, for they are included in the record, and are before us. This bill is without merit, and the answer given by the juror shows the reason. He said:
 

 “My answer to that question would be, I don’t see how my occupation would bias me against a case of this kind.
 
 I certainly would he biased or prejudiced against any crime of any Icind.
 
 (Italics ours.) I don’t see how I could have a bias against a case.”
 

 But, if there was anything prejudicial to the accused in the remarks of the district attorney it was effaced by the instructions given by the judge to the jury. See State v. Horton, 151 La. 683, 92 So. 298, and the long line of authorities there cited. (This juror was accepted without challenge of any kind.)
 

 Bills Nos. 22 and 23 (transcripts, 182, 1S5). When the first juror was accepted, and again when only three jurors had been accepted, the defendant asked that they be sworn at once and before the jury was completed. This the trial judge refused, being of opinion that the jurors should all be sworn at one time after all twelve had been selected. Since there is no statute in this state prescribing
 
 ivhen
 
 the jurors, once accepted, shall be sworn to try the case, it follows that they may be sworn at any time before the trial is commenced by the reading of the indictment. State v. Wiggins, 50 La. Ann. 333, 23 So. 334. But we think that it is the better plan to swear them all at onetime after the jury is completed, for then there is no danger of failing to
 
 swear them all
 
 and having the record show it clearly, as there would be were it attempted to swear them one at a time. In this case the record shows clearly that all twelve jurors were duly sworn when the jury was completed and before the indictment was read to them. Transcript, 25.
 

 VIII.
 

 During the taking of the evidence before Judge Sandel, thirteen bills of exception were taken, as follows:
 

 Bill No. 4 (transcript, 82), Dr. J. T, French, a witness for the state, having been examined and cross-examined, the defendant sought to reeross-.examine him after the redirect examination: The trial judge ruled:
 

 “The redirect examination being confined to new matter brought out on cross-examination, the court now declines to allow defendant to recross.”
 

 The ruling was correct. State v. Turner, 25 La. Ann. 573.
 

 Bill No. 6 (transcript, 91) J. E. Rutledge, a witness for the state, was asked' by the state whether or not he had visited the scene of the
 
 alleged
 
 killing on the Sunday following May 27th, the date charged in the indictment. This was objected to as. leading, and because no killing had as yet bepn
 
 proved.
 
 The question was direct, but not leading, for it merely directed the attention of the witness in relation to the subject of the inquiry, but did not suggest what his-answer should be; moreover, it is within the sound discretion of the trial judge to-permit leading questions. There may have been no killing
 
 proved
 
 as yet, but the state-
 
 *861
 
 had
 
 alleged
 
 a killing when the indictment was read to the jury.
 

 Bill No. 16. (transcript, 154). Herbert Simmons, a witness for the state, was asked by the state whether he had seen an automobile with a man and woman in it on the morning after the
 
 alleged
 
 murder of Mildred Thomas, coming into the city limits of West Monroe, to which the defendant objected as not part of the res gestae, irrelevant, and assuming a fact not yet proved. The question was clearly relevant, for it tended to establish one link in a chain of circumstantial evidence (see ante, par. I); it assumed no fact as proved, but properly referred to the
 
 alleged
 
 murder of Mildred Thomas (alleged by the state in the indictment read to the jury). The question of res gestae had nothing to do with it.
 

 Bill No. 18 (transcript, 162). All witnesses having been excluded from the courtroom, one Jim Rogers, who had been summoned but had not appeared with the other witnesses, was put On the stand to testify for the state. He had not been in the courtroom ; but the defendant objected to his testifying until he should be examined as to whether he had spoken to any one about the case whilst walking around. The court ruled properly that the witness should be allowed to testify, and defendant could on cross-examination go into the question of whether he had spoken to any one about the case. Moreover, it was all a matter within the discretion of the trial judge. State v. Jordan, 151 La. 293, 91 So. 740.
 

 Bill No. 20 (transcript, 169). The defendant objected to the admission in evidence of a statement made by him to the sheriff after his arrest, reduced to writing and signed by defendant, on the ground that it was in the form of questions and answers, and, if introduced, would have the same effect as placing the defendant on the stand as a witness against himself. The bill has no merit; the fact that the statement was in the form of questions and answers did not impair its admissibility. State v. Doyle, 146 La. 973, 84 So. 315; State v. Canton, 131 La. 255, 59 So. 202; State v. Besancon, 128 La. 85, 54 So. 480.
 

 Bill No. 17 (transcript, 157). The .sheriff was asked whether the accused made a further statement to him, to which the defendant objected that this was an attempt to enlarge and explain the written statement. The note of evidence shows that the statement inquired about was made on another occasion, and was entirely disconnected with the written statement and the matter therein contained.
 

 Bill No. 13 (transcript, 142). Counsel for the defendant asked the sheriff what the accused had said to 'him on a certain occasion about a certain matter. The sheriff sought to avoid answering, but counsel insisted that he should; whereupon the sheriff did answer by stating what the accused had said. Counsel objected that the sheriff’s answer was not responsive to the question, and was intended to prejudice the accused before the jury. The statement made by the accused was irrelevant and perhaps prejudicial, but, as the district judge says, “Counsel insisted on an answer, and got the answer which is stated in the bill of exception. It [the sheriff’s answer] was responsive to the question asked and insisted on,” for the sheriff answered the question by stating simply what the accused had said to. him.
 

 Bill No. 19 (transcript, 166). When Mrs.'Dr. Tisdale was on the stand, she was asked by the state a question, to which the defendant objected. The jury was retired; the objection was argued and sustained. When the jury returned, the district attorney said to the witness that, her testimony having been objected to, and the objection sustained, she would be excused; to which
 
 *863
 
 remark of the district attorney the defendant objected. We see nothing irregular about ■this; the jury could not avoid knowing that the objection had been sustained, since the witness would not have been allowed to answer the question, and objections are often ■sustained in the presence of the jury. The fact that the jury was thus informed of the fact that the objection had been sustained oould not prejudice the defendant.
 

 Bill No. 14 (transcript, 146). The broken wheel bf the automobile was brought into court to be exhibited to the jury. When brought in, it was attached to an axle which was not the axle of the car from which the wheel was taken. The defendant objected. 'The district attorney stated that the sole purpose of attaching the wheel to an axle was merely to enable the jury to see the play or wobble which the wheel would have as it revolved about the axle. The objection was properly overruled. The play or wobble of the wheel in revolving about an axle was the matter at issue, and this might have been .shown by putting the wheel on any pin or peg, or on a broom handle (as we have done, for want of an axle), and the fact that an .axle was used instead of a peg or broom handle did not 'impair the value of the illustration. In all cases of exhibiting physical evidence to the jury, the sole question is whether it will assist, and not mislead, the jury in understanding the matter before them. If it answers that purpose, it is admissible; and it is not necessary that the illustration be given under
 
 exactly
 
 the same circumstances — it suffices that the circum.stances be substantially the same. State v. Dunn, 161 La. 532, syllabus 40, 109 So. 56. The case of State v. Martin, 145 La. 35, 81 So. 747, has no application here. In that case .the court held in a merely
 
 advisory
 
 opinion, without ruling on the bill, that physical evidence could not be admitted before it had been shown that the conditions were
 
 exactly
 
 the same. The term
 
 exactly
 
 goes too far; that would make such evidence practically inadmissible at all, since it is almost never .possible to reproduce conditions
 
 exactly.
 
 But, in stating the bill to which the opinion had reference, it was pointed out that the conditions shown by the photograph offered differed materially from the conditions under which the homicide took, place, and did not faithfully show the true situation. In Spurlock v. Traction Co., 118 La. 1, 42 So. 575, the device which the court said should have been brought into court by the defendant belonged to defendant; here the automobile axle did not belong to the state.
 

 Bill No. 1 (transcript, 66). When Dr. Carney was on the stand as a witness for defendant, he protested against being examined as an expert on anything except X-ray work, and asked the court that his examination be limited to that. He declared that he did not claim to be an expert in surgery. The defendant sought to elicit his opinion as to whether a fracture of the skull, such as shown in the photograph, could have resulted from the deceased having fallen and struck her head on the pole or small log offered in evidence. Under the circumstances above stated the judge properly refused to allow the witness to give his opinion, even though he claimed to be qualified to answer. State V. Smith, 106 La. 33, 36, 30 So. 248.
 

 Bill No. 2. Tom Christy, a witness for defendant, was asked by the state, for the purpose of impeaching him, whether when he and Tillman Scruggs, a brother of defendant, were operating a garage, stolen cars were not found therein by the sheriff. This was objected to as irrelevant, and intended to prejudice the jury ■ against the defendant. The question was clearly relevant for the purpose intended, “A witness may be cross-examined in regard to conduct on his part which would have the tendency to discredit his testimony before the jury.” State v. Ca
 
 *865
 
 ron, 118 La. 349, 42 So. 960. Moreover, the witness answered that such was not the fact, and thus no harm could have been done.
 

 Bill No. 12 (transcript, 139). T. E. Burnett, a witness for defendant, was asked by the defendant to'repeat a. conversation which he had with the defendant on the morning of the death of Mildred Thomas. This was objected to as an attempt to introduce hearsay testimony and self-serving declarations. The objection was properly sustained. The fact that Miss Thomas was alive when she entered the sanitarium, and may not yet have been dead when the conversation took place, does not make that conversation a part of the res gestas. All question* of res gestae ceased
 
 at latest
 
 as soon as defendant left Miss Thomas at the sanitarium.
 

 Bill No. 15 (transcript, 151). The state and the defendant having joined in a request that the jury be taken to the scene of the occurrence, the judge thus instructed the jury before leaving:
 

 “In visiting the scene of the alleged accident, you will remain together, and permit no outsiders to talk to you, or you to talk to them, except to show you the place where the scene is, or where the young lady’s body was, and such other information as you .desire to be furnished to you in the presence of counsel and the accused.”
 

 To which instructions the defendant objected, but without stating any grounds, and reserved a bill of exception. Whereupon the court asked, “What part of the instructions do you object to? Do you suggest what other instructions I should give the jury?” To which■ counsel replied, “No, sir; that is not our duty, your honor.”
 

 General objections to the charge or instructions given by the judge present nothing for review. State v. Varnado, 126 La. 732, 52 So. 1006. The grounds of such objections must be stated so as to inform the trial judge of the nature of the objection and afford him an opportunity to rectify the’ matter complained of. State v. Robinson, 143 La. 543, 551, 78 So. 933; State v. Irvine, 126 La. 434, 443, 52 So. 567; State v. Braxton, 157 La. 733, 739, 103 So. 24.
 

 IX.
 

 During the argument before the jury two biils of exception were reserved as follows :
 

 Bill No. 27 (transcript, 213). Counsel for the defendant having stated in his argument that he would send all hard-boiled persons to the Bolsheviks in Russia, the district attorney stated in his reply that from his information about Russia murderers and rapists went unpunished there; .to which the defendant objected. It is not every idle or irrelevant remark made by á district attorney which will cause a case to be remanded. (State v. Murray, 139 La. 280, 71 So. 510), especially where the judge has been asked for no ruling or instruction in connection therewith, since such matters will generally be cured by such instructions (State v. Horton, 151 La. 683, 92 So. 298).
 

 Bill No. 28 (transcript, 215). The district attorney in his argument to the jury remarked that the car was parked with, the young lady in it, and that none of the Scruggs family came to his assistance, except the one who went to telephone for the doctor, and, not a member of the defendant’s family took the witness stand. The court thereupon instructed the jury that they were the exclusive judges of the facts, which they are to, take- as they remember them, and not from the argument of counsel;, to which remarks of the district attorney the defendant objected and reserved a bill.
 

 In the statement of the case (supra, paragraph I) it is shown thát defendant stopped near his parents’ home. It was clearly to that circumstance, and the failure of the members of defendant’s family to testify as to what occurred there, that the district
 
 *867
 
 attorney was' referring; and nothing in the bill shows that at that time either the court or the parties viewed the remarks in any other light. It is simply preposterous to suppose the trial judge would not have rebuked the district attorney had he thought, or had it been suggested to him, that this was a comment on the fact that the accused had not taken the stand in his own behalf, and that he would have failed to instruct the jury promptly that the accused was not obliged to take the stand, and that his failure to do
 
 so
 
 must not be considered against him. And it is equally preposterous to suppose, had such a glaring error been committed, that the three learned and able counsel for the defendant would have overlooked it in their extended application for a new trial. We cannot, therefore, accept the contention of the defendant, made for the first time in this court, that the statement of the district attorney was “the same as stating that the defendant did not take the witness stand.” Cf. State v. Jack, 139 La. 885, 72 So. 429: State v. Robertson, 133 La. 806, 63 So. 363: State v. Connor, 142 La. 631, 77 So. 482. And it was clearly permissible for the district attorney to comment on the fact that members of defendant’s family, ho might have testified in his behalf, were not called upon to do so. State v. Johnson, 151 La. 625, 92 So. 139.
 

 X.
 

 Only one bill of exception was reserved to the judge’s charge to the jury, as follows:
 

 Bill No. .10 (transcript, 111). The judge charged the jury that rape was a felony; he defined rape, and charged that, if the jury were satisfied beyond a reasonable doubt by the evidence that the accused killed the deceased in the commission of a rape upon her, or in the attempt to commit a rape upon her, they were authorized to imply and find the malice aforethought necessary to constitute murder. The charge was correct and proper. The per curiam of the judge (transcripts, 113-115) shows the state had introduced considerable evidence of a circumstantial nature tending to show that a rape, or an attempt at rape, had been committed by the accused upon the deceased, and it was for the jury to determine whether such, evidence sufficed to convince them beyond a reasonable doubt that the accused had raped, or attempted to rape, the deceased, when she received the injury which resulted in her death. Hence it was proper for the judge to charge the jury as he did.
 

 XI.
 

 Bill of exception No. 29 (transcript. 218). When defendant’s motion for a new trial came on for consideration, the same was taken up by Judge Sandel. The defendant asked that Judge Shell be called in to sit thereon with Judge Sandel, which request was refused.
 

 There are two reasons why the request was properly refused. The first is that Judge Sandel had jurisdiction to pass on the motion, being one of the judges of said court, and jurisdiction to try the motion for a new trial being vested in
 
 the court,
 
 and not in any individual judge thereof. Allen v. State, 102 Ga. 619, 29 S. E. 470; Life & Fire Ins. Co. v. Wilson, 8 Pet. 291, 8 L. Ed. 949; Goos v. Fred Krug Brewing Co., 60 Neb. 783, 84 N. W. 258; People v. McConnell, 155 Ill. 192, 40 N. E. 608. And, since all matters occurring before Judge Shell were put on record, and the evidence relating thereto had been reduced to writing, Judge Sandel was in a position to pass upon them. People v. McConnell, 155 Ill. 192, 40 N. E. 608. In that respect the case is clearly distinguishable from People v. McConnell, 146 Ill. 532, 34 N. E. 945, and State v. Reynolds, 154 La. 114, 97 So. 334, where the evidence had not been reduced to writing.
 

 The second reason is that the motion
 
 *869
 
 for a new trial did not call for a review of anything occurring before Judge Shell. None of his (Judge Shell’s) rulings were therein complained of; the matters complained of being only such as occurred
 
 after
 
 Judge Shell left the bench and when Judge Sandel presided. The only reference whatever to the regularity of the jury is in the last paragraph of the motion (transcripts, 36-48), wherein it is said that the defendant “is informed and believes” that the
 
 H. H. Blanks,
 
 who was accepted and served as a juror, was not the
 
 3. E. Blanks, Jr.,
 
 who had been summoned as a tales juror, a matter which is not mentioned in appellant’s brief, and which is manifestly without merit, since the record shows (transcript, 24) that the juror who served was “H. H. Blanks, Jr.,” the same who was summoned as a tales juror (transcript, 59), and not “H. H. Blanks.”
 

 XII.
 

 Bill of exception No. 30 (transcript, 220; transcript, 36). The motion for a new trial complains in various forms of the insufficiency of the evidence to support a conviction; but this court is without jurisdiction to inquire into that.
 

 The only other new matter set up in said motion is as follows: That the Monroe News Star newspaper published a full report of and comment upon the trial whilst same was in progress, which influenced the verdict of the jury. As the jury was sequestered and had no access to the newspapers, the point has no merit.
 

 That on the visit of the jury to the scene of the occurrence the jury heard testimony and the judge commented on the evidence in the case. The trial judge says:
 

 “As to the allegations in the motion for a new trial, concerning what happened when the jury, the defendant, and all his attorneys, the judge, the district attorney, and sheriff and deputy clerk visited the scene of the crime, all proceedings were conducted in the presence of the defendant and his attorneys, the jury, the judge, and other court officers, and the defendant and his attorneys made no objection of any kind and retained no bill of exceptions, and those proceedings are criticized for the first time in this motion for a new trial.”
 

 As no complaint was made at the time, it was too late to complain on a motion for a new trial. State v. Henderson, 113 La. 232, 36 So. 950; State v. Hauser, 112 La. 313, 36 So. 396; State v. Moore, 119 La. 564, 44 So. 299; State v. White, 152 La. 614, 94 So. 135.
 

 Defendant complains both of some disorder in the courtroom to his prejudice
 
 and
 
 of the judge having ordered the courtroom cleared (for a while) in consequence thereof. It was the proper course for the judge to pursue, since he is charged with the policing of his court; and the clearing of the courtroom for the purpose of suppressing disorder therein was not a denial of the right to a public trial. The public trial contemplated by the Constitution is an orderly trial, not a disorderly one.
 

 Defendant complains that a deputy sheriff cautioned a jury man not to make notes of the evidence whilst in the jury room. It was the duty of the sheriff to see that the jury whilst in his charge did nothing which the law did not permit, and the caution was therefore a proper one.
 

 Defendant complains that a deputy sheriff, with the consent of the sheriff, had a fight with defendant’s brother whilst the jury was deliberating. This fight was not in the presence of the jury, but occurred where the jury could not see it. We fail to see how this occurrence, unknown to the jury, could have affected the jury to the prejudice of defendant. Cf. State v. Robertson, 133 La. 806, 63 So. 363.
 

 The trial judge says that certain alleged newly discovered evidence was merely cumulative, and that due diligence had not been used to procure it.
 

 XIII.
 

 Bill No. 31 (transcript, 236). The defendant filed a motion in arrest of judgment
 
 *871
 
 ón the ground that the trial had been presided over by two different judges at different times, all as set forth in paragraphs IV and V; i. e., with the full consent of the accused. That is tp say, Judge Shell presided' whilst the jury was being selected and Judge Sandel during all the rest of the trial.
 

 We are not called upon to say here whether this proceeding w.as such an irregularity as would have vitiated all the proceedings, had it been done over the objection of the defendant ; suffice it to say that, if it was an irregularity, it was in fact waived by the defendant, and the only question presented is whether it was such an irregularity as the defendant might waive. ■
 

 It will be observed that it was not a matter relating to the
 
 jurisdiction
 
 of the tribunal before which the defendant was being tried, for in each instance the proceedings were had before one of the judges of the fourth district court, each having concurrent jurisdiction with the other; so that the only irregularity, if any, was that one of the judges presided during one phase of the trial and another presided during another and distinct phase thereof.
 

 We are of opinion that this was such an irregularity, if an irregularity at all, as defendant could have waived and did waive.
 

 “The doctrine of waiver, as applied to a criminal case, is a.very broad one; quite as broad as in civil cases. It applies to constitutional as well as statutory rights.” Hence it has been held that an accused who had a constitutional and statutory right to .have his general plea of not guilty passed upon by the same jury which had also passed upon his special plea of insanity might none the less waive that right, and consent that one jury which had found against him on his special plea should be discharged, and the general issue tried before another jury. Oborn v. State, 143 Wis. 249, 126 N. W. 737, 31 L. R. A. (N. S.) 966.
 

 In State v. Rose, 114 La. 1061, 1065, 38 So. 858, this court said:
 

 “An accused may waive his constitutional, statutory, or common-law rights, except when forbidden by some superior cbunter principle of law deemed necessary for his protection.”
 

 And in State v. Arbuno, 105 La. 719, 30 So. 163, this court held that a prisoner on trial can only exceptionally be permitted to stand by and suffer irregular proceedings to take place, and then ask to have the case reversed on account thereof, particularly where the steps taken were at his own request.
 

 See, also, State v. Charles, 130 La. 683, 58 So. 509.
 

 XIV.
 

 The formal assignment of errors filed in this court merely goes over the matters already presented in the foregoing bills of exception, except that in paragraphs 12 and 43 complaint is made as to certain parts of the judge’s general charge, as to which no objection was made when the charge was delivered. These objections cannot be considered. The time for urging objections to the charge of the judge to the jury is before the retirement of the jury, so as to inform the judge of the nature of the objections and afford, him an opportunity to rectify the matter complained of. State v. Braxton, 157 La. 733, 103 So. 24; State v. Miller, 125 La. 254, 260, 51 So. 189; State v. Bush, 117 La. 463, 41 So. 793; State v. Weston, 107 La. 45, 31 So. 383.
 

 XV.
 

 The suggestion by brief of alleged error patent on the face of the record is that the record shows that only eleven grand jurors were present when the indictment was found and when it was returned. “It is not necessary that all twelve of the grand jurors be present at the finding of a bill; the concurrence of nine members is sufficient, hence no more need be present at such finding; nor is it necessary that all twelve of the grand ju
 
 *873
 
 rors appear in open court when the bill is presented.” Marr’s Crim. Jur. (2d. Ed.) p. 659; cf. Act 135 of 1898, § 7.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.
 

 O’NIELL, C. J., dissents from the rulings on bills 1 and 31.